## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* McGLINN.

IN ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

Argued April 17, 1885.—Decided May 4, 1885.

*Fort Leavenworth* v. *Lowe, ante,* 525, affirmed and applied to this case.

The general principle that when political jurisdiction and legislative power over a territory are transferred from one sovereign to another, the municipal laws of the territory continue in force until abrogated by the new sovereign, is applicable—as to territory owned by the United States, the exclusive jurisdiction of which is ceded to them by a State in a manner not provided for by the Constitution—to so much thereof as is not used by the United States for its forts, buildings and other needful public purposes.

The State of Kansas ceded to the United States exclusive jurisdiction over the

Fort Leavenworth Military Reservation within that State, then and previously the property of the United States. At the time of the cession a State law was in force in Kansas requiring railroad companies whose road was not enclosed by a lawful fence, to pay to the owners of all animals killed or wounded by the engines or cars of the companies the full value of the animals killed and the full damage to those wounded, whether the killing or wounding was caused by negligence or not. *Held,* That this act remained in force in the reservation after the cession.

This was an action brought by the defendant in error as plaintiff, to recover the value of a cow killed by the engine and cars of the plaintiff in error. Judgment for the plaintiff, which was affirmed by the Supreme Court. The facts which raise the Federal question are stated in the opinion of the court.

*Mr. E. C. Cook* (with whom were *Mr. Thomas F. Withrow,* and *Mr. M. A. Low* on the brief) for plaintiff in error.

*Mr. W. Hallett Phillips* for defendant in error.

Mr. JUSTICE FIELD delivered the opinion of the court.

This case comes here from the Supreme Court of the State of Kansas. It is an action for the value of a cow alleged to have been killed by the engine and cars of the Chicago, Rock Island and Pacific Railway Company, a corporation doing business in the County of Leavenworth, in that State. It was brought in a State District Court, and submitted for decision upon an agreed statement of facts, in substance as follows: That on the 10th of February, 1881, a cow, the property of the plaintiff, of the value of $25, strayed upon the railroad of the defendant at a point within the limits of the Fort Leavenworth Military Reservation in that county and State, where the road was not enclosed with a fence, and was there struck and killed by a train passing along the road; that the Reservation is the one referred to in the act of the Legislature of the State of February 22, 1875; that a demand upon the defendant for the $25 was made by the plaintiff more than thirty days before the action was brought; and that, if the plaintiff was entitled to recover attorney's fees, $20 would be a reasonable fee.

The action was founded upon a statute of Kansas of March 9, 1874, entitled "An Act relating to killing or wounding stock by railroads," which makes every railway company in the State liable to the owner for the full value of cattle killed, and in damages for cattle wounded, by its engine or cars, or in any other manner in operating its railway. It provides that, in case the railway company fails for thirty days after demand by the owner to pay to him the full value of the animal killed, or damages for the animal wounded, he may sue and recover the same, together with a reasonable attorney's fee for the prosecution of the action. It further provides that it shall not apply to any railway company, the road of which is enclosed with a good and lawful fence to prevent the animal from being on the road. Laws of Kansas, 1874, ch. 94.

On the 22d of February, 1875, the Legislature of Kansas passed an act ceding to the United States jurisdiction over the Reservation, the first section of which is as follows: " That exclusive jurisdiction be, and the same is hereby, ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States Military Reservation, known as the Fort Leavenworth Reservation, in said State, as declared from time to time by the President of the United States; saving, however, to the said State the right to serve civil or criminal process within said Reservation, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said State, but outside of such cession and Reservation; and saving further to said State the right to tax railroad, bridge, and other corporations, their franchises and property on said Reservation." Laws of Kansas, 1875, ch. 66.

The District Court gave judgment for the plaintiff, assessing his damages at $45, an amount which was made by estimating the value of the cow killed at $25, and the attorney's fee at $20, these sums having been agreed upon by the parties. The case was carried to the Supreme Court of the State, where the judgment was affirmed, that court holding that the act of Kansas, relating to the killing or wounding of stock by railroads, continued to be operative within the limits of the Reservation,

as it had not been abrogated by Congress, and was not inconsistent with existing laws of the United States. In so holding the court assumed, for the purposes of the case, without however admitting the fact, that the act ceding jurisdiction to the United States over the Reservation was valid, and that the United States had legally accepted the cession. To review this judgment the case is brought here.

Two questions are presented for our determination; one, whether the act of Kansas purporting to cede to the United States exclusive jurisdiction over the Reservation is a valid cession within the requirements of the constitution; the other, if such cession of jurisdiction is valid, did the act of Kansas relating to the killing or wounding of stock by railroads continue in force afterwards within the limits of the Reservation?

It can hardly be the design of counsel for the railroad company to contend that the act of cession to the United States is wholly invalid, for, in that event, the jurisdiction of the State would remain unimpaired, and her statute would be enforceable, within the limits of the Reservation equally as in any other part of the State. What we suppose counsel desires to maintain is, that the act of cession confers exclusive jurisdiction over the territory, and that any limitations upon it in the act must therefore be rejected as repugnant to the grant.

This point was involved in the case of *Fort Leavenworth Railroad* v. *Lowe, ante,* 525. We there held, that a building on a tract of land owned by the United States used as a fort, or for other public purposes of the federal government, is exempted, as an instrumentality of the government, from any such control or interference by the State as will defeat or embarrass its effective use for those purposes. But, in order that the United States may possess exclusive legislative power over the tract, except as may be necessary to the use of the building thereon as such instrumentality, they must have acquired the tract by purchase, with the consent of the State. This is the only mode prescribed by the Federal Constitution for their acquisition of exclusive legislative power over it. When such legislative power is acquired in any other way, as by an express act ceding it, its cession may be accompanied

with any conditions not inconsistent with the effective use of
the property for the public purposes intended.   We also held
that it is competent for the Legislature of a State to cede ex-
clusive jurisdiction over places needed by the general govern-
ment in the execution of its powers, the use of the places being,
in fact, as much for the people of the State as for the people
of the United States generally, and such jurisdiction necessarily
ending when the places cease to be used for those purposes.

Upon the second question the contention of the railroad
company is that the act of Kansas became inoperative within
the Reservation upon the cession to the United States of exclu-.
sive jurisdiction over it.   We are clear that this contention
cannot be maintained.   It is a general rule of public law, rec-
ognized and acted upon by the United States, that whenever
political jurisdiction and legislative power over any territory
are transferred from one nation or sovereign to another, the
municipal laws of the country, that is, laws which are intended
for the protection of private rights, continue in force until abro-
gated or changed by the new government or sovereign.   By
the cession public property passes from one government to the
other, but private property remains as before, and with it those
municipal laws which are designed to secure its peaceful use
and enjoyment.   As a matter of course, all laws, ordinances, and
regulations in conflict with the political character, institutions,
and constitution of the new government are at once displaced.
Thus, upon a cession of political jurisdiction and legislative
power—and the latter is involved in the former—to the United
States, the laws of the country in support of an established
religion, or abridging the freedom of the press, or authorizing
cruel and unusual punishments, and the like, would at once
cease to be of obligatory force without any declaration to that
effect; and the laws of the country on other subjects would
necessarily be superseded by existing laws of the new govern-
ment upon the same matters.   But with respect to other laws
affecting the possession, use and transfer of property, and de-
signed to secure good order and peace in the community, and
promote its health and prosperity, which are strictly of a munic-
ipal character, the rule is general, that a change of govern-

ment leaves them in force until, by direct action of the new government, they are altered or repealed. *American Insurance Co.* v. *Canter*, 1 Pet. 542; Halleck, International Law, ch. 34, § 14.

The counsel for the railroad company does not controvert this general rule in cases of cession of political jurisdiction by one nation to another, but contends that it has no application to a mere cession of jurisdiction over a small piece of territory having no organized government or municipality within its limits; and argues upon the assumption that there was no organized government within the limits of Fort Leavenworth. In this assumption he is mistaken. The government of the State of Kansas extended over the Reservation, and its legislation was operative therein, except so far as the use of the land as an instrumentality of the general government may have excepted it from such legislation. In other respects, the law of the State prevailed. There was a railroad running through it when the State ceded jurisdiction to the United States. The law of the State, making the railroad liable for killing or wounding cattle by its cars and engines where it had no fence to keep such cattle off the road, was as necessary to the safety of cattle after the cession as before, and was no more abrogated by the mere fact of cession than regulations as to the crossing of highways by the railroad cars, and the ringing of bells as a warning to others of their approach.

It is true there is a wide difference between a cession of political jurisdiction from one nation to another and a cession to the United States by a State of legislative power over a particular tract, for a special purpose of the general government; but the principle which controls as to laws in existence at the time is the same in both. The liability of the railroad company for the killing of the cow did not depend upon the place where the animal was killed, but upon the neglect of the company to enclose the road with a fence which would have prevented the cow from straying upon it. The law of Kansas on the subject, in our opinion, remained in force after the cession, it being in no respect inconsistent with any law of the United States, and never having been changed or abrogated. The judgment is accordingly                                  *Affirmed.*