# BENSON *v.* UNITED STATES.

.ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 1007.   Argued October 28, 31, 1892. — Decided December 5, 1892.

The Constitution permits a State to cede to the United States jurisdiction over a portion of its territory.

The United States has exclusive jurisdiction over the entire Fort Leavenworth reservation in Kansas, except as jurisdiction was reserved to the State of Kansas by the act of cession.

If a party does not object to testimony when offered, he cannot afterwards be heard to say that there was error in receiving it.

An objection to the competency of testimony made after the witness has left the stand, and after several other witnesses have been subsequently examined, comes too late; and a motion, in such case, to strike out the testimony on the ground of incompetency, is *held* to have been properly overruled.

When two persons are jointly indicted for crime, and a severance is ordered, one of the accused, whose case is undisposed of, may be called and examined as a witness on behalf of the government against his codefendant.

THE plaintiff in error, Benson, was indicted in the Circuit Court of the United States for the District of Kansas, jointly with one Mary Rautzahn, for a murder alleged to have been committed at the Fort Leavenworth Military Reservation, within that district, and within the exclusive jurisdiction of the United States.

On the trial Benson's wife was called as a witness on behalf of the government, and was admitted to testify. At the time when her evidence was taken no objection was made to it; but in a subsequent stage of the proceedings, after several other witnesses had been examined, a motion was made to exclude it.

On the motion of the government a severance was had between the case of Mary Rautzahn and that of Benson. She, not having been tried, was called as a witness on behalf of the government, against Benson, and her testimony was admitted.

Benson, being convicted, sued out this writ of error, and assigned for error; (1) that the alleged crime was not committed within the jurisdiction of the United States; (2) that the evidence given by his wife was improperly admitted against him ; and, (3) that Mary Rautzahn was not a competent witness against him.

*Mr. A. L. Williams* (with whom were *Mr. Leland J. Webb, Mr. W. C. Webb,* and *Mr. William Dill* on the brief) for plaintiff in error.

I. As to the first assignment of error he cited *McCracken v. Todd,* 1 Kansas, 148 ; *United States v. Ward,* Woolworth, 17 ; *Millar v. Kansas,* 2 Kansas, 174 ; *Clay v. Kansas,* 4 Kansas, 49 ; *United States v. Stahl,* Woolworth, 192 ; *United States v. Yellow Sun,* 1 Dillon, 271 ; *Fort Leavenworth Railroad v. Lowe,* 114 U. S. 525 ; *Chicago, Rock Island &c. Railway v. McGlinn,* 114 U. S. 542 ; contending that there is no concurrent jurisdiction of offences committed on the "reservation." Crimes committed within any "fort" are within the exclusive jurisdiction of the Federal courts. Crimes committed by private persons outside of or away from a "fort" proper, and not committed against any property of the government, are within the exclusive jurisdiction of the state courts. If this is not so, then a mere state statute can divest or destroy state sovereignty, and confer upon Federal courts a jurisdiction not theretofore possessed by the Federal government. A State cannot by its sole act narrow or reduce its territorial area, nor divest itself of any part of its political jurisdiction. Constitution, Art. 4, § 3 ; Art. 1, § 8.

II. As to the competency of Mrs. Benson as a witness. The competency of husband or wife as a witness against the other in criminal trials in the Federal courts, except by the act of March 3, 1887, 24 Stat. 635, c. 397, has never been directly authorized or recognized by act of Congress. The competency of witnesses in the Federal courts therefore has been, and as a general rule is, determined by the rules of the common law, or by the statutes of the State in which the Federal court is sitting

at the time of the trial. We insist that, under the laws of the United States, she was not a competent witness for any purpose whatever against her husband, even though she might be willing to testify.

The laws of Kansas, (Gen. Stats. 1889, § 5280,) permit a wife to testify " on behalf of " her husband in a " criminal cause ; " but the code, § 323 provides that " in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage." In *State* v. *McCord*, 8 Kansas, 232, it was held that the wife of a person on trial in a criminal case was competent to testify as a witness for the State, if she did so voluntarily. In that case Mrs. McCord voluntarily offered herself and testified as a witness for the State against her husband, but *not* respecting " any communication " whatever made to her by him, but concerning the fact or act of the shooting or killing by her husband of her paramour; and the case is not instructive here.

*Bowman* v. *Patrick*, 32 Fed. Rep. 368, was a civil action, in which the question of the admissibility and competency of letters written by a defendant to his wife was involved. In his opinion Mr. Justice Miller goes to the fullest extent in holding that such communications were inadmissible.

The case of *United States* v. *Jones*, 32 Fed. Rep. 569, was a criminal case, and it was expressly decided, that " in the courts of the United States the wife is not a competent witness for or against her husband in a criminal case, and this on the score of public policy." And in a note to the opinion in that case, numerous cases are cited showing how far different States have changed the rule of the common law respecting the competency of husband and wife as witnesses against each other, the grounds upon which such changes are sustained or upheld, and the reasons which not only permit, but sometimes compel them to testify against each other respecting offences committed by the one against the person of the other. But an examination of the cases referred to will furnish no ground for holding in the case at bar that Mrs. Benson was a competent witness to testify against her husband " respecting any communications made by him to her."

It may be said that it was not Mrs. Benson's testimony, but the letters written by Benson himself, which furnished evidence against him. The court will look in vain through the record to find a single word of testimony given by any witness other than Mrs. Benson respecting the penmanship, or handwriting, or the genuineness of the letters; and without her testimony, that the letters were in his handwriting, and "communications" written by him to her, they could not and would not have been given in evidence against him.

III. Mrs. Rautzahn was not competent as a witness against Benson. Neither Benson nor his counsel were in court when the order of severance was made. Whether it was illegal or not, it was undoubtedly asked by the district attorney that he might call Mrs. Rautzahn as a witness for the government against Benson.

The only statute of the United States on the subject, act of March 16, 1878, 20 Stat. 30, c. 37, applies only to persons on trial, desiring to offer evidence in their own behalf, and does not affect this case.

The rule of the common law was, that a codefendant, jointly indicted as a principal in the first degree, and against whom the indictment was still pending and undetermined, was not a competent witness for the crown against his codefendant, and this, whether the trial was joint, or several. There are grave doubts whether he was under the same circumstances a competent witness in behalf of his codefendant. A majority of the English cases hold against his competency. Russell and Wharton, speaking of the common-law rule, both state that "accessories" and "codefendants" jointly indicted are incompetent; while the rule was, and still is, that if not indicted at all, or if indicted separately, accessories and accomplices are competent. Whatever reason there may be for this distinction, or however inconsistent the two rules may appear to be, the fact remains, that the two rules as stated were the rules of the common law. The exceptions found in the books are so few as hardly to constitute substantial exceptions. 1 Greenleaf on Ev. § 363; *United States* v. *Sacia*, 2 Fed. Rep. 754; *Rex* v. *Desmond*, Noy, 154; *Rex* v. *Davis*, 3 Keble, 136;

*Rex* v. *Lafone,* 5 Esp. 154; *Regina* v. *George,* Car. & M. 111; *Queen* v. *Gerber,* Temple & Mew, 647; *People* v. *Bill,* 10 Johns. 95; *State* v. *Brien,* 3 Vroom, (32 N. J. Law,) 414; Roscoe's Crim. Ev. 7th Am. ed. 127, 128, where the rule is thus stated : "It is quite clear that an accomplice is a competent witness for the prisoner in conjunction with whom he himself committed the crime," "but if he is charged in the same indictment he cannot be called until after he has been acquited, or convicted, or a *nolle prosequi* has been entered."

There is nothing in the criminal code of Kansas which extends this rule in that State.

*Mr. Assistant Attorney General Parker* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

In June, 1891, plaintiff in error was convicted in the Circuit Court of the United States for the District of Kansas of the crime of murder, and sentenced to be hanged. The crime was charged to have been committed on the Fort Leavenworth military reservation, in the District of Kansas, and the first question presented for our consideration is one of jurisdiction.

The Fort Leavenworth military reservation is within the territorial boundaries of the State of Kansas, as established by the act of admission, 12 Stat. 126, c. 20; and though then the property of the government, and for a long time theretofore withdrawn from the public lands, as a military reservation, was not excepted from the jurisdiction of the newly admitted State. But in 1875 the legislature of the State of Kansas passed an act, entitled "An act to cede jurisdiction to the United States over the territory of the Fort Leavenworth military reservation," the first section of which is as follows: "That exclusive jurisdiction be, and the same is hereby, ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States military reservation known as the Fort Leavenworth reservation in said State, as declared from time to time

by the President of the United States, saving, however, to the said State the right to serve civil or criminal process within said reservation, in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said State, but outside of said cession and reservation; and saving further to said State the right to tax railroad, bridge and other corporations, their franchises and property, on said reservation." Laws of Kansas, 1875, p. 95. This act was before this court for consideration in two cases: *Fort Leavenworth Railroad Company* v. *Lowe*, 114 U. S. 525; *Chicago & Pacific Railway Co.* v. *McGlinn*, 114 U. S. 542. It was held in those cases that the act was a valid cession of jurisdiction to the general government; and that, although it did not appear that any application had been made therefor by the United States, yet, as it conferred a benefit, acceptance of the cession was to be presumed. It was conceded that article I, section 8, of the Constitution was not applicable, as there was not within the terms of that section a purchase of the tract by the consent of the legislature of the State, but it was decided that, while a State has no power to cede away its territory to a foreign country, yet it can transfer jurisdiction to the general government. In the opinion in the first case, on page 541, the court observed: "In their relation to the general government, the States of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of a different country; and the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the States, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals and other buildings for public uses are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defeat or impair their use for those purposes, and if, to their more effective use, a

cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the legislature of the State." And in the opinion in the second case, on page 546, the prior decision was interpreted in these words : " We also held that it is competent for the legislature of a State to cede exclusive jurisdiction over places needed by the general government in the execution of its powers, the use of the places being, in fact, as much for the people of the State as for the people of the United States generally, and such jurisdiction necessarily ending when the places cease to be used for those purposes."

It is contended by appellant's counsel that, within the scope of those decisions, jurisdiction passed to the general government only over such portions of the reserve as are actually used for military purposes, and that the particular part of the reserve on which the crime charged was committed was used solely for farming purposes. But in matters of that kind the courts follow the action of the political department of the government. The entire tract had been legally reserved for military purposes. *United States* v. *Stone,* 2 Wall. 525, 537. The character and purposes of its occupation having been officially and legally established by that branch of the government which has control over such matters, it is not open to the courts, on a question of jurisdiction, to inquire what may be the actual uses to which any portion of the reserve is temporarily put. There was, therefore, jurisdiction in the Circuit Court; and the first contention of plaintiff in error must be overruled.

A second important question arises upon the admission of the testimony of the wife of the defendant. She was called by the government, and testified, as to six slips and two letters, that they were in the handwriting of the defendant, and that the letters were received by her through the mail. This was all of her testimony. It was received without objection. Not only was there no objection, but the court followed the suggestions of the defendant's counsel in respect to its admission. The record shows that, when she was called as a witness, the defendant's counsel stated : " The woman

upon the stand is the wife of the defendant. I desire that the court shall be satisfied of that by proper inquiries in order that the fact may be established, and then I wish her to be advised that she cannot, except with her own free will and voluntary consent, be used as a witness against him. She is his lawful wife." Thereupon some colloquy took place between the court and counsel, in which the latter, not in terms consenting that she be sworn and examined as a witness, yet making no objection thereto, insisted again and again that she be advised that she need not testify unless she desired to testify, Thereupon the court ruled that she should be so advised, and did in fact so advise her.

Again, the letters and slips, having been identified by Mrs. Benson, were received in evidence; and, being written in German, an interpreter was called to translate them to the jury. The defendant declared, while he was translating, that he was doing so incorrectly; and afterwards went upon the stand as a witness in his own behalf, and gave what he called a correct translation; and he did not confine himself to this, but went further, and testified that he wrote the letters.

If this were all that appeared in the record, there would be no shadow of a question; for if a party does not object to testimony, he cannot afterwards be heard to say that there was error in receiving it. But after Mrs. Benson had left the stand, and several other witnesses had been examined, the defendant interposed a motion to strike out her testimony on the ground that it was incompetent; which motion was over-ruled, and exception taken.

At common law, an objection to the competency of a witness on the ground of interest was required to be made before his examination in chief; or, if his interest was then not known, as soon as it was discovered. 1 Greenl. on Ev., § 421. And the rule was the same in criminal as in civil cases. Roscoe's Cr. Ev., 124; *Commonwealth* v. *Green*, 17 Mass. 515, 538. Tested by that rule, the attempt to get rid of the testimony of Mrs. Benson by a motion, long after its admission, to strike it from the record, was too late. The defendant by not objecting to her testimony at the time it was offered,

waived the objection. But if that rigorous rule does not now prevail, and a party has a right at any time, by motion to strike out, to secure the removal from a case of objectionable and incompetent testimony, still we think no substantial error can be adjudged in overruling this motion; for here not only did the defendant not object to this testimony, but on the contrary it was admitted in the way suggested and insisted upon by his counsel. The court accepted the suggestions of such counsel, and gave the witness the advice and directions urged. The testimony was in reference to a subordinate matter — mere identification of certain papers. No objection was raised until after the witness had left the stand and the trial had proceeded at some length, and when, perhaps, witnesses by whom the same fact could have been established were discharged, or when too late to obtain other witnesses by whom it could have been proved, and the defendant himself, as a witness in his own behalf, testified as to having written the letters. Under these circumstances we do not think there was error in overruling this motion to strike out.

The third principal point upon which defendant relies is this: Mary Rautzahn, the daughter of the murdered woman, was jointly indicted with the defendant. A severance was ordered by the court, and on this trial of defendant his codefendant, Mary Rautzahn, was called and examined as a witness for the government, and this examination was before any disposition of the case against her. Authorities on this question are conflicting. The following sustain the ruling of the Circuit Court: *State* v. *Brien*, 3 Vroom, (32 N. J. Law,) 414; *Noyes* v. *The State*, 12 Vroom, (41 N. J. Law,) 418; *Noland* v. *The State*, 19 Ohio, 131; *Allen* v. *The State*, 10 Ohio St. 287; *Jones* v. *The State*, 1 Georgia, 610; *State* v. *Barrows*, 76 Maine, 401. In this last case is quite a discussion of the question by Peters, C. J., and review of the authorities. We quote from the opinion: "As a question simply at common law, although there is a contradiction in the cases, the preponderance of authority seems to favor the admission of a codefendant, not on trial, as a witness, if called by the prosecution. There is very much less authority allowing him to be sworn as a

witness for the defence. Whether the distinction be a sensible one or not, it has prevailed extensively. . . .

"Most of the authors on evidence evidently adopt the view that the testimony is admissible when offered by the State. Although but little authority is adduced to support their statements, and the doctrine is not very clearly or positively stated in some instances, still such a general concurrence of favorable expression has much weight upon the question. It goes far to show the common opinion and practice. Hawkins' P. C. book 2, c. 46, § 90; 1 Hale's P. C. 305; 2 Starkie's Ev. 11; Roscoe's Cr. Ev. 9th ed. 130, 140; 2 Russell's Crimes, 957. Mr. Wharton says: 'An accomplice is a competent witness for the prosecution, although his expectation of pardon depends upon the defendant's conviction, and although he is a codefendant, provided in the latter case his trial is severed from that of the defendant against whom he is offered.' Whart. Cr. Ev. 8th ed. § 439. Mr. Greenleaf states the same rule. He says: 'The usual course is, to leave out of the indictment those who are to be called as witnesses, but it makes no difference as to the admissibility of an accomplice, whether he is indicted or not, if he has not been put on his trial at the same time with his companions in guilt. 1 Greenl. Ev. § 379.'"

Referring to the English authorities, it has there been held that, at common law, and independently of any statute, when two persons jointly indicted are tried together, neither is a competent witness; but that if one is tried separately, the other is a competent witness against him, because, as observed by Mr. Justice Blackburn, "the witness was a party to the record, but had not been given in charge to the same jury." *Queen* v. *Payne*, L. R. 1 C. C. 349, 354; *Winsor* v. *The Queen*, L. R. 1 Q. B. 390.

But it is said that this court has already practically decided this question in the case of *United States* v. *Reid*, 12 How. 361. The precise question in that case was as to the right of the defendant to call his codefendant, and not that of the government to call the codefendant, and a distinction has been recognized between the two cases. It is true that the reasons

given for the exclusion of the witness in one are largely the same as those given for his exclusion in the other, to wit, interest and being party to the record; but public policy is also urged in favor of the exclusion of one defendant as a witness for his codefendant, for each would try to swear the other out of the charge. And as the distinction prevailed, whether founded on satisfactory reasons or not, it is sufficient to justify us in holding that that case is not decisive of this. Further, the stress in that case was not on this question. The defendant was indicted and tried in the Circuit Court of the United States for the District of Virginia. A statute had been passed in that State, in terms permitting a codefendant when not jointly tried to testify in favor of the one on trial, and that statute was invoked as securing the competency of the witness, and the question which was discussed was whether the existing statute law of Virginia controlled, and it was held that it did not, and that the question was to be determined by the common law as it stood in Virginia at the date of the Judiciary Act of 1789. It was assumed both in this court and in the Circuit Court, 3 Hughes, 509, 539, 540, that by that law the codefendant was incompetent. It was not affirmed that such was the rule in the mother country or in the other States of the Union. We do not feel ourselves, therefore, precluded by that case from examining this question in the light of general authority and sound reason.

    In this examination it is well to consider upon what reasons the codefendant was excluded. They were substantially two: first, that he was interested; and, second, that he was a party to the record. It is familiar knowledge that the old common law carefully excluded from the witness stand parties to the record, and those who were interested in the result; and this rule extended to both civil and criminal cases. Fear of perjury was the reason for the rule. The exceptions which were engrafted upon it were only those which sprang from the supposed necessities of the case, and were carried no further than such necessities demanded. So late as 1842 it was a question doubtful enough to be sent on certificate of division to this court, whether the owner of goods stolen on the high seas was

a competent witness on the trial of the party accused of the larceny, the statute providing for the punishment of the offence enacting that the party convicted should be fined not exceeding fourfold the value of the property stolen — the one moiety to be paid to the owner and the other to the informer. And after a full discussion, in an opinion by Mr. Justice Story, it was resolved in favor of the competency of the witness. *United States* v. *Murphy*, 16 Pet. 203.

Nor were those named the only grounds of exclusion from the witness stand; conviction of crime, want of religious belief, and other matters were held sufficient. Indeed, the theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any of the temptations of interest. The courts were afraid to trust the intelligence of jurors. But the last fifty years have wrought a great change in these respects, and to-day the tendency is to enlarge the domain of competency and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. This change has been wrought partially by legislation and partially by judicial construction. By Congress, in July, 1864, (Rev. Stat. § 858,) it was enacted that "in the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried," with a proviso as to actions by and against executors, etc. And on March 16, 1878, it also passed an act permitting the defendant in criminal cases to testify at his own request. 20 Stat. 30, c. 37. Under that statute, if there had been no severance and the two defendants had been tried jointly, either would have been a competent witness for the defendants, and though the testimony of the one bore against the other, it would none the less be competent. *Commonwealth* v. *Brown*, 130 Mass. 279. The statute in terms places no limitation on the scope of the testimony, for its language is "the person so charged shall at his own request, but not otherwise, be a competent witness." His competency being thus established, the

limits of examination are those which apply to all other witnesses. Legislation of similar import prevails in most of the States. The spirit of this legislation has controlled the decisions of the courts, and steadily, one by one, the merely technical barriers which excluded witnesses from the stand have been removed, till now it is generally, though perhaps not universally, true that no one is excluded therefrom unless the lips of the originally adverse party are closed by death, or unless some one of those peculiarly confidential relations, like that of husband and wife, forbids the breaking of silence.

In the light of these authorities and this legislation of Congress, there is less difficulty in disposing of this question. If interest and being party to the record do not exclude a defendant on trial from the witness stand, upon what reasoning can a codefendant, not on trial, be adjudged incompetent? The conviction or acquittal of the former does not determine the guilt or innocence of the latter, and the judgment for or against the former will be no evidence on the subsequent trial of the latter. Indeed, so far as actual legal interest is concerned, it is a matter of no moment to the latter. While the codefendant not on trial is a party to the record, yet he is only technically so. Confessedly, if separately indicted, he would be a competent witness for the government; but a separate trial under a joint indictment makes in fact as independent a proceeding as a trial on a separate indictment. In view of this, very pertinent is the observation of Chief Justice Beasley, in *State* v. *Brien, supra:* " The only reason for the rejection of such a witness is, that his own accusation of crime is written on the same piece of paper, instead of on a different piece, with the charge against the culprit whose trial is in progress. It is obvious such a rule could only stand, in any system of rational law, on the basis of uniform precedent and ancient usage. I have discovered no such basis." We think the testimony of Mrs. Rautzahn was competent, and there was no error in its admission.

These are the only important questions presented by defendant. Two or three other matters are suggested, and, indeed, only suggested. In respect to them it is sufficient to say that

either the rulings of the court were not erroneous, or else no sufficient exceptions were taken to them.

The judgment of the Circuit Court is

*Affirmed.*