## UNITED STATES v. CARTER.

(Circuit Court, S. D. New York. November 15, 1897.)

MURDER—COMMISSION ON UNITED STATES BATTLESHIP—EXCLUSIVE JURISDICTION—CESSION OF TERRITORY BY STATE LEGISLATURE.

Rev. St. § 5339, subd. 1, provides that "every person who commits murder within any fort, arsenal, dock yards, magazine, or in any other place or district of the county under the exclusive jurisdiction of the United States, * * * shall suffer death." C. was indicted under this section for a murder committed on board the United States battleship Indiana, then moored at Cob Dock, being within territory which had not been purchased by the United States, under Const. art. 1, § 8, subd. 17, but over which exclusive jurisdiction had been ceded to the United States by the New York legislature. *Held*, that the circuit court for the Southern district of New York had exclusive jurisdiction of the offense charged.

### Indictment for Murder.

There are two indictments against the defendant, Philip F. Carter, for murder; one under section 5391 of the Revised Statutes of the United States, and the other under subdivision 1 of section 5339 of the same statute, which reads as follows: "Every person who commits murder within any fort, arsenal, dock yards, magazine, or in any other place or district of the county under the exclusive jurisdiction of the United States, * * * shall suffer death." Upon being arraigned to plead, the defendant pleaded not guilty to the indictment under section 5391, and to the indictment under section 5339 he interposed a plea to the jurisdiction of the court, alleging as a reason therefor that the offense charged in the indictment was not committed in any river, haven, basin, or bay out of the jurisdiction of any particular state, nor within any place purchased by the United States with the consent of the legislature of the state of New York for the erection of forts, arsenals, and other needful buildings, nor in any place within the exclusive jurisdiction of the United States, but, on the contrary, in a place within the exclusive jurisdiction of the state of New York; and demands judgment that defendant be discharged. To this plea the government files a replication, claiming exclusive jurisdiction in the United States of the offense charged in the indictment, and sets forth in support thereof the several acts of the legislature of the state of New York, and the various deeds of cession, whereby jurisdiction was ceded to the United States in and over the premises in which this offense was committed; and demands that defendant answer to the indictment. To this replication the defendant demurs upon two grounds: (1) That the place where the murder was committed was within the jurisdiction of the state of New York, and not within the jurisdiction of the United States, the same not having been purchased by the United States, with the consent of the state of New York, as required by article 1, § 8, subd. 17, of the federal constitution; and (2) that a war vessel is not a place, within the meaning of the United States statutes. Further facts appear in the opinion.

Wallace Macfarlane, U. S. Dist. Atty.

J. Grattan MacMahon, for defendant.

TENNEY, District Judge. The question here submitted is this: Has the United States circuit court for the Southern district of New York exclusive jurisdiction of the offense charged in the indictment, under section 5339 of the Revised Statutes, or must the defendant be tried for such offense in the state courts of New York? This alleged murder was committed on board the United States battleship Indiana, June 30, 1897. The vessel was then the property of the United States, and was moored at Cob Dock, in the waters of Wallabout Bay, in the East River. It is conceded that the waters of Wallabout Bay are

within the city and county of New York. In 1807 the legislature of the state of New York passed an act authorizing certain commissioners (naming them) to cede the jurisdiction of certain land in this state to the United States. Laws 1807, c. 51. This act was amended in 1808; and in April, 1810, these commissioners, in pursuance of said act, ceded to the United States jurisdiction over a certain tract of land, fully described by metes and bounds, adjacent to the navy yard on the east. The original deed was filed in the office of the secretary of state of New York, together with a map of said premises. The aforesaid act of the legislature and deed of cession declared that the United States had use and jurisdiction over said tract of land ceded as aforesaid, and covered with the waters of the East River, at Wallabout Bay, and that such use and jurisdiction was granted to the United States for the defense and safety of the city of New York; the United States to retain such use and jurisdiction so long as the said tract should be used and applied to the defense and safety of the city and port of New York, and no longer; the jurisdiction so ceded not to prevent the execution on said tract of land of any process, civil or criminal, under the authority of the state. 1 Rev. St. pt. 1, c. 1, tit. 3, § 8. In 1853 the legislature of the state of New York passed an act entitled "An act to vest in the United States of America jurisdiction over certain lands in the city of Brooklyn and adjacent thereto" (chapter 355, Laws 1853). This act ceded to the United States, for the use and purposes of a navy yard and naval hospital, jurisdiction over all the lands used and occupied by the United States as a navy yard and naval hospital, according to the plans furnished by the navy department. The statute gives, by metes and bounds, the boundaries of the territory over which jurisdiction is ceded. This act expressly provides that "the United States may retain such use and jurisdiction as long as the premises described shall be used for the purposes for which jurisdiction is ceded, and no longer." That the premises over which jurisdiction has been ceded as aforesaid were being used by the United States at the time of the alleged homicide, for the very purposes specified in the foregoing acts and deeds of cession, there can be no dispute. Though Cob Dock was not built in 1810, when the early deed of cession was made, yet there can be no question but that Cob Dock, and the waters of Wallabout Bay, in the East River, were included in the cessions of 1810 and 1853. It must be assumed, then, that the place where this homicide was committed was fully covered by the acts and deeds of cession as aforesaid.

There is no claim that the United States purchased these premises with the consent of the state of New York. All the jurisdiction the United States had in and over the waters and lands in question was obtained, if at all, by cession from the state of New York, as aforesaid. Without going into an extended discussion of the subject of purchase, or a lengthy review of adjudicated cases upon this question, it is enough to say that it has been repeatedly held by the supreme court of the United States that a state can cede exclusive jurisdiction to the United States of any part of its territory, making such reservation in the terms of cession as it may deem best, not inconsistent with

exclusive jurisdiction in the United States. Railroad Co. v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995; Railway Co. v. McGlinn, 114 U. S. 542, 5 Sup. Ct. 1005; Benson v. U. S., 146 U. S. 325, 13 Sup. Ct. 60; In re Ladd, 74 Fed. 31. The ceding of these lands and waters to the United States was as much for the benefit of the people of the state of New York as for the people of the United States. The building of forts, arsenals, and other useful buildings, and the maintenance of a navy yard and naval hospital upon the premises ceded to the United States by the state of New York as aforesaid is as much for the protection and benefit of the state, its people and property, as for the protection and benefit of the people of the United States generally. The court, in the McGlinn Case, 114 U. S. 542, 5 Sup. Ct. 1005, in describing its decision in the Fort Leavenworth Case, 114 U. S. 525, 5 Sup. Ct. 995, used this language:

"We also held that it is competent for the legislature of a state to cede exclusive jurisdiction over places used by the general government in the execution of its power, the use of the places being in fact as much for the people of the state as for the people of the United States generally, and such jurisdiction necessarily ending when the places cease to be used for those purposes."

This would seem to be conclusive of the point in question, namely, that exclusive jurisdiction can be ceded by the state to the United States, and that absolute purchase by the United States is not necessary. In the Benson Case, 146 U. S. 325, 13 Sup. Ct. 60, the plaintiff in error was indicted and convicted in the circuit court of the United States for the district of Kansas for murder alleged to have been committed at the Ft. Leavenworth military reservation, within that district. The question of jurisdiction was here raised as in the case at bar. Ft. Leavenworth was a military reservation within the territorial boundary of the state of Kansas. Jurisdiction over the same had been ceded by the legislature of the state to the United States in 1875, by an act entitled "An act to cede jurisdiction to the United States over the territory of Fort Leavenworth military reservation." (Laws 1875, p. 95.) In this case the court held, Mr. Justice Brewer writing the opinion, that the United States circuit court had jurisdiction, and dismissed the writ of error.

The most recent case bearing upon this subject, decided in May, 1896, is In re Ladd, 74 Fed. 31. The petitioner, Ladd, was arrested by the state authorities for selling intoxicating liquors on the Ft. Robinson military reservation, without a license, as required by the laws of the state of Nebraska. He sued out a writ of habeas corpus in the United States circuit court, on the ground that the state authorities had no jurisdiction over this reservation, but that jurisdiction vested solely in the United States. It appears that exclusive jurisdiction over the Ft. Robinson military reservation had been ceded to the United States by the legislature of Nebraska in 1887, the first section of the act reading as follows:

"That the jurisdiction of the state of Nebraska in and over the military reservation known as Fort Robinson and Fort Niobrara, be and the same are hereby ceded to the United States: provided, that the jurisdiction hereby ceded shall continue no longer than the United States shall own and occupy said military reservation." Laws 1887, p. 628.

The court held, Mr. Justice Shiras writing the opinion, that this cession of jurisdiction clothed the United States with exclusive jurisdiction over the reservation, such exclusive jurisdiction to continue as long as the United States occupied the lands set forth in the cession act, and that the courts of the state ceased to have jurisdiction over crimes committed within such reservation, and discharged the petitioner from arrest.

The cases herein cited would seem to be conclusive of defendant's first contention, to wit, that the United States have no jurisdiction of the crime alleged to have been committed on board the battleship Indiana while lying in the waters of Wallabout Bay.

The second ground of defendant's demurrer is that the battleship Indiana is not a "place," within the meaning of the United States statutes; and cites upon the argument, as his authority, U. S. v. Bevans, 3 Wheat. 336. In the Bevans Case the defendant was indicted and convicted for murder on board the United States ship of war Independence while lying in the waters of Boston Harbor, and while such vessel was in commission, and in the actual service of the United States. In this case the supreme court held that it was not the offense committed, but the place in which it was committed, that determined the question of jurisdiction. It appeared that the United States had no jurisdiction over the waters of Boston Bay, in which the gunboat Independence was lying when the murder was committed, but that such waters were within the sole and exclusive jurisdiction of the state of Massachusetts. The very opposite is true in the case at bar. The Indiana was lying in waters wholly within the jurisdiction of the United States, while the gunboat Independence was lying in waters wholly within the jurisdiction of the state of Massachusetts. While the facts of these two cases are very similar, yet they are entirely different, and the direct opposite of each other in the matter of jurisdiction. The court, in its opinion, say, Chief Justice Marshall voicing the court:

"The place described is unquestionably within the original territory of Massachusetts. It is, then, within the jurisdiction of Massachusetts, unless that jurisdiction has been ceded to the United States."

We must, therefore, hold that the allegations in the indictment are sufficient, and that the battleship Indiana was a "place," within the meaning of the United States statutes, and that the United States circuit court for the Southern district of New York has exclusive jurisdiction of the offense charged in the indictment to have been committed by the defendant. The demurrer of the defendant must therefore be overruled, and his plea to the jurisdiction of the court dismissed. Let the defendant plead to the indictment.