

shares embraced in the plaintiff's registration statement had been sold, there were outstanding over 650,000 shares of like stock of the plaintiff corporation, and the interest of these stockholders as well as those who might thereafter invest might be affected.

I think that the question here is not whether the action of the defendants in refusing to permit the plaintiff to withdraw its application is erroneous or not, but whether, in view of the decision in the Jones Case by the Supreme Court, it has deliberately acted in disregard of the law. I cannot say that it has so acted. Its action was interlocutory only, and after a final hearing the whole case can be reviewed by the Circuit Court of Appeals.

It would be a very extreme case that would justify a court to review an interlocutory order of another court or of a board with quasi judicial powers by an injunction to restrain further proceedings, where Congress has vested in the Circuit Court of Appeals the jurisdiction to review all the proceedings after a final hearing.

The result is that in my opinion, the plaintiff has his remedy at law under the statute, and that the application for an injunction should be denied, and the motion to dismiss the bill of complaint sustained.

Clif Langsdale, of Kansas City, Mo., for plaintiff.

Cowgill & Popham, of Kansas City, Mo., for defendants.

OTIS, District Judge.

Each of these cases was removed by the corporate defendant from the state court and in each case the plaintiff has moved to remand. A single question is presented. Since the injuries on account of which these suits were brought occurred on property belonging to the United States where a federal building (the post office building and federal court house at 9th and Grand in Kansas City, Missouri) was being razed preparatory to the erection of a new federal building, do these cases arise under "the laws of the United States" within the meaning of Sections 41 and 71 of Title 28, U.S.C., 28 U.S.C.A. §§ 41, 71?

**COFFMAN v. CLEVELAND WRECKING CO. OF CINCINNATI et al.**

**LAUTENSCHLAGER v. SAME.**

**Nos. 9942, 9944.**

District Court, W. D. Missouri, W. D.

July 21, 1938.

The question does not seem difficult. Beyond possibility of controversy the site where these causes of action arose was subject to the exclusive jurisdiction of the United States when they arose. Sections 11072, 11073, R.S.Mo.1929, Mo.St. Ann. §§ 11072, 11073, p. 4857; Hill v. Ring Const. Co., D.C., 19 F.Supp. 434, 435. With the acquisition of that site by the United States the laws of Missouri, not inconsistent with laws of the United States, continued in force, but they became, at the moment of acquisition, laws of the United States. Chicago, R. I. & P. R. Co. v. McGlinn, 114 U.S. 542, 546, 5 S.Ct. 1005, 29 L.Ed. 270. These cases, therefore, arose under the laws of the United States. No other laws were or could be in force at the scene when and where the causes of action had their origin.

The case of Danielson v. Donmopray et al., D.C., 57 F.2d 565, cited by plaintiffs, is not in point. Judge Kennedy's views as to the law, expressed in the opinion in that case, are identical with our views. He too relied on the doctrine of the McGlinn Case, supra. He held only and held rightly that such a case as these cases might be brought in a state court and hence might be removed, if otherwise removable to the federal court. Undoubtedly that is true. But that conclusion has no relevancy to the question we have discussed here—do these cases arise under the laws of the United States?

The Motions to remand are overruled. It is so ordered. Exceptions to plaintiff.

## In re IRISH BEVERAGE CO., Inc.

District Court, S. D. New York.

April 4, 1938.

William Wallace Young, of New York City, for claimant.

Joseph Dannenberg, of New York City (Julius M. Arnstein, of New York City, of counsel), for trustee.

PATTERSON, District Judge.

The question is whether the claimant, Johnson, should have the proceeds of sale of certain ale held by the trustee in bankruptcy.

Johnson, a merchant in Liverpool, sold the ale to the bankrupt, an importer here. The sales were f. o. b. Liverpool, the bankrupt paying ocean freight and insurance. Johnson having indicated from the outset that he was unwilling to extend credit to the bankrupt, it was arranged that he would consign the goods to a third party, Inter-Maritime Forwarding Company, and that the Inter-Maritime Company would make delivery of the goods to the bankrupt