**FALLS CITY BREWING CO., Inc., v. REEVES et al.**

No. 261.

District Court, W. D. Kentucky.

July 22, 1941.

Milliken & Handmaker, of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., Berryman Green, Sp. Asst. to Atty. Gen., Major E. M. Brannon, Judge Advocate General's Dept. U. S. Army, for defendants Capt. Robt. Stevenson and Post Exchange.

Hubert Meredith, Atty. Gen., of Kentucky, Harry D. France, Asst. Atty. Gen., for other defendants.

Charles W. Milner, Geo. W. Norton, Jr., and B. Hudson Milner, all of Louisville, Ky., amici curiæ.

MILLER, District Judge.

The plaintiff Falls City Brewing Company instituted this action in the Franklin Circuit Court of Kentucky as a declaratory judgment suit under the provisions of Sections 639a—1 through 639a—12 of Carroll's Kentucky Codes, generally known as the Kentucky Declaratory Judgment Act. The action was removed to the United States District Court for the Western District of Kentucky under the provisions of Section 1589, Title 10 U.S.C.A., by the defendants Captain Robert Stevenson of the United States Army, and Post Exchange officer at Fort Knox, Kentucky, and the Post Exchange at Fort Knox, Kentucky.

Findings of Fact.

The plaintiff is engaged in the business of a brewer in Louisville, Kentucky, and over a period of time in the past has established a substantial business with the Post Exchange at Fort Knox, Kentucky, in its sale of malt beverages to the Post Exchange. By virtue of its operations on the Federal military reservation the Post Exchange has not procured a license from the State of Kentucky to sell malt beverages and has not complied with the provisions of the Kentucky Statutes taxing and regulating sales of such malt beverages in Kentucky. Kentucky Statutes, Sections 2554b-97 through 2554b-222, Section 4281c-2 and 4281c-7. On October 9, 1940, the United States Congress adopted House Resolution No. 6687, 4 U.S.C.A. § 13 et seq., generally known as the Buck Resolution, Section 1(a), 4 U.S.C.A. § 13(a), of which provided as follows: "(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area." On or about December 31, 1940, the Department of Revenue of the Commonwealth of Kentucky, by the defendant H. Clyde Reeves, its Commissioner, advised the commanding officer of Fort Knox, Kentucky, that by virtue of the Buck Resolution the Post Exchange came within the taxing jurisdiction of the Commonwealth of Kentucky, and would be required to purchase a license to sell malt beverages in the future, and that all sales of such beverages in the future would be subject to the taxes and other regulations imposed by Kentucky Statutes applicable thereto. The defendant Captain Robert Stevenson, the duly appointed and acting Post Exchange officer contended that the Post Exchange was an instrumentality of the Federal Government and accordingly exempt from the provisions of the Buck Resolution, which by Section 3 thereof provided for the following exemption:

"Sec. 3 [§ 15]. (a) The provisions of sections 1[13] and 2 [14] of this Act [title] shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser.

"(b) A person shall be deemed to be an authorized purchaser under this section only with respect to purchases which he is permitted to make from commissaries, ship's stores, or voluntary unincorporated organizations of Army or Navy personnel, under regulations promulgated by the Secretary of War or the Secretary of the Navy."

Thereafter the plaintiff brought this action against the members of the Kentucky Alcoholic Beverage Control Board, the members of the Kentucky State Tax Commission, H. Clyde Reeves, Commissioner of Revenue of Kentucky, Cassius M. C. Porter, Administrator of the Malt Beverage Unit, Captain Robert Stevenson, Post Exchange Officer, and the Post Exchange, asking for a construction of the Buck Resolution with respect to its application to the

transactions between the plaintiff and the Post Exchange, setting out the existing controversy, the refusal of the Post Exchange to comply with the ruling of the Department of Revenue of Kentucky, and its inability to do business with the Post Exchange by reason of penalties provided by the Statutes, if the position of the Department of Revenue was correct. The defendants, excepting Captain Stevenson and the Post Exchange, have moved to dismiss the complaint and have filed an answer denying several material allegations of the complaint, including the contention that the Post Exchange is a governmental instrumentality. The defendants Captain Stevenson and the Post Exchange have filed an answer admitting the allegations of the complaint and joining in its prayer for a declaration of rights with respect to the existing controversy.

Prior to December 31, 1940, and subsequent to the year 1900 the United States Government purchased a large number of tracts of land in and about Hardin County, Kentucky, and established thereon the reservation and military post known as Fort Knox; the prior owners of the land conveyed the same by deeds to the United States; and the purchase of the lands and the establishment of the military reservation was made with the consent of the State of Kentucky, given by an Act of the Kentucky General Assembly passed in 1892 and now known as Section 2376 of Carroll's Kentucky Statutes. The Post Exchange at Fort Knox is located within the Federal reservation known as Fort Knox and conducts its business in a building owned and provided by the United States. This is in accordance with army regulations which provide that buildings at military reservations are to be maintained for recreational purposes from funds appropriated for repairs to barracks, quarters and other military structures, and that recreational activities set up at posts, camps and stations are to be maintained from funds made available by the War Department. The amount of funds so made available is normally dependent on the amount included in the Appropriation Act for the fiscal year. At posts where exchange buildings have not been so provided the commanding officer is directed to set apart for the use of the Post Exchange any suitable public building or rooms available. Heating and the issue of suitable apparatus therefor for any room or building used by the Exchange is authorized, and the Quartermaster Corps is also authorized to provide supplies for interior and exterior illumination.

The parties have stipulated that the Post Exchange at Fort Knox was organized under Army Regulations 210—65 promulgated June 29, 1929, and under Army Regulations 210—65 *C 3, promulgated March 9, 1940, and that its activities and functions are as described therein. The following is a summary of its organization and operation:

At each post the commanding officer is directed to establish and maintain a Post Exchange whenever there is need for it, there are organizations present that desire participation therein, and the personnel is sufficient to profitably maintain and support such an exchange. Subject to the general supervision of superior authority, the commanding officer has complete jurisdiction over the conduct of all exchanges within his command, and he is held strictly responsible for their efficient operation and for the enforcement of exchange regulations. The primary purposes of the exchange are to supply troops, at the lowest possible prices, with articles of ordinary use, wear, and consumption not supplied by the Government, to afford to troops means of rational recreation and amusement, and through exchange profits to provide, when necessary the means for improving the company messes. It may include a meat market, a vegetable market and a gasoline filling station; a well-kept restaurant; a barber shop, laundry, tailor shop and shoe repair shop; a gymnasium with athletic equipment; recreation rooms including billiard and pool tables and bowling alleys; a library and a theatre in which moving picture service, amateur dramatics and other entertainments may be conducted. The affording of means of rational recreation and amusement is to be regarded of equal importance with the supplying of merchandise to troops at lowest possible prices, and with supplementing messes. The Post Exchange is to be conducted so as to make a small net profit and in such a manner as to be of real assistance and convenience to the enlisted men rather than as a large profit making institution. In addition to supervising the conduct of the Post Exchange the Commanding Officer is charged with the maintenance of recreational activities, entertainments, service clubs, libraries, and community cooperation. These activities are centered ordinarily about the Post Exchange, which may with the approval of the Exchange Council and the Command-

38

ing Officer provide the financial support necessary for their maintenance within certain limits. Membership is limited to such companys, troops, batteries, aero squadrons, or other similarly organized units and detachments as have purchased stock in the exchange. The Post Exchange is authorized to sell to, or make purchases for, the following persons and organizations only, and in the cases of persons the purchases are limited to those required for their own use or for the use of dependent members· of their families: Officers and enlisted men of the regular army, former emergency officers who have been placed upon the retired list, retired enlisted Naval Personnel and Naval Personnel detailed, assigned or serving with the Army; army nurses; contract surgeons; members of the Officers' Reserve Corps and the Enlisted Reserve Corps while on active duty; officers and enlisted men of the national guard and inactive national guard; civilian employees authorized for service abroad, having a status recognized by the War Department as part of an expeditionary force; civilians employed or serving at military posts; persons in actual attendance at Reserve Officers' Training Camps and Citizens Military Training Camps.

The Post Exchange is operated subject to the approved recommendations of the Exchange Council which consists of the Post Exchange Officer and the Commanding Officers of each company, troop, battery, hospital detachment or similar organization participating in the profits of the Post Exchange. Its personnel consists of an exchange officer, an exchange steward, and such other assistants as may be necessary and authorized by the Exchange Council and the Commanding Officer. The Post Exchange Officer is selected and detailed by the Commanding Officer and receives no compensation for his services as exchange officer. He is in charge· of the Post Exchange, responsible for its management and orderly operation. The exchange steward is generally a non-commissioned officer, but in large exchanges where financial and other considerations fully justify it he may be a civilian. The assistants are ordinarily enlisted men, but in an exchange where financial and other considerations fully justify it they may be civilians, preference being given to retired enlisted men and honorably discharged soldiers. 5% of the profits, if any, are set aside as a fund which is divided among the members of the Exchange. There is then set aside such

sum as the council shall recommend as a portion of the recreation fund, following which there is set aside such sum as the council may determine for the laying out, repairing and cultivating gardens, for the purchase of books, newspapers, periodicals, stationery and similar articles for the exchange library, for the purchase of gymnastic appliances, and for prizes for athletic sports. The balance is then divided among the organizations contributing to the exchange on such equitable basis as shall be determined by the council with the approval of the commanding officer. The money thus distributed is not paid to the individual members of the particular organization but is paid in to the company fund. The Quartermaster is authorized to sell to the exchange at cost any subsistence stores except exceptional articles, and in reselling such goods in their original forms no profit will be made by the exchange beyond the fractions of cents necessary to make change. The telegraph expenses are paid by the Post Exchange as an item pertaining to the cost of maintenance, except that messages on post exchange business over telegraph, radio, and cable lines owned and operated by the War Department may be transmitted without charge. The use of penalty envelopes by officers in charge of the exchange in conducting correspondence of the Post Exchange is permitted when it relates to the conduct of the exchange business, but is not extended to the carrying of merchandise.

### Conclusions of Law.

The Commonwealth of Kentucky in consenting to the acquisition by the United States of the lands now occupied by Fort Knox did not reserve in the Commonwealth of Kentucky any right to levy any character of tax against property owned or privileges enjoyed within Fort Knox. Section 2376 Kentucky Statutes. "When the Legislature of a state consents to the purchase of land by the United States, its consent may be accompanied by such reservations or conditions as it may see fit to impose, so long as they are not inconsistent with the free and effective use of the land for the public purposes intended. Fort Leavenworth Railroad Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Chicago, Rock Island & Pacific Railroad Co. v. McGlinn 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270; Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991; Palmer v. Barrett, 162 U.S. 399, 16 S.Ct. 837, 40 L.Ed. 1015;

Arlington Hotel Co. v. Fant, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447; United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 286, 74 L.Ed. 761. But, in the absence of reservations in the consenting act, federal jurisdiction over land acquired by the United States by consent of the state is exclusive of state authority." Commonwealth v. King, 252 Ky. 699, 702, 68 S.W.2d 45, 47. By Chapter 97 of the Acts of 1904 the Commonwealth of Kentucky relinquished and ceded to the United States all the rights and jurisdiction which she possessed over the lands and premises so conveyed, and exempted the premises and all Government property thereon from all taxes and assessments so long as it remained property of the United States. Section 2376d-1, Kentucky Statutes. Accordingly the military reservation of Fort Knox is under the exclusive jurisdiction of the United States, and the State of Kentucky could not levy a tax against property owned or privileges enjoyed within the reservation. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Fort Leavenworth Railroad Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; Western Union Telegraph Co. v. Chiles, 214 U.S. 274, 29 S.Ct. 613, 53 L.Ed. 994; Panhandle Oil Co. v. Mississippi, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 583. See Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L. Ed. 1502.

◼ The Supreme Court opened the way for the application of certain nondiscriminatory State taxes on Federal areas, except insofar as those taxes might constitute a burden upon the United States, by its decisions in December 1937 in James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318, and Silas Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187. The Buck Resolution of October 9, 1940 clarified the effect of these decisions by voluntarily waiving immunity from State taxation in certain instances, and by giving to the States full jurisdiction and power to levy and collect certain state taxes to the same extent and with the same effect as though the area was not a federal reservation, with the proviso that it was not to be considered as to authorize the levy or collection of any tax on any instrumentality of the United States. The question to be decided therefore is whether or not the Fort Knox Post Exchange, as organized and operated as hereinabove set out, is an instrumentality of the United States within the meaning of the Buck Resolution. "Instrumentality" is defined by Webster as "a condition of being an instrument; subordinate or auxiliary agency; agency of anything as means to an end." The same word is defined in 32 Corpus Juris, page 947, as "anything used as a means or an agency; that which is instrumental; the quality or condition of being instrumental." It is clear from the facts in this case that a Post Exchange is an integral part of an army organization and is an essential factor in military life. They are not purely voluntary organizations, as is contended by the State in this case, but they are set up, organized and operated pursuant to military authority. It is the duty of the commanding officer of the post to establish and maintain a post exchange whenever there is a need for it; the duties of the post exchange officer are his official duties as an army officer, and he receives entire compensation for the performances of these duties in the salary received by him from the United States Government as an army officer. The post exchange officer, the post exchange steward, and the post exchange assistants perform their respective duties under official assignments of duty; the option does not exist for them to refuse the assignment. The Post Exchange occupies a building constructed and maintained by the Federal Government and equipped with federal funds. The general welfare and morale of the personnel in a military training camp is a very important part of any military program looking to a well-trained and efficient army. The view is now well established that adequate recreational facilities for soldiers in training are as important as adequate drill fields. Much energy and large expenditures are devoted by those in civilian life in providing such facilities for soldiers in nearby posts. Some expenditures for this purpose come by way of direct appropriations by the United States Congress, but a large portion can be attributed to the proceeds that are made available by the operations of the Post Exchange, which proceeds inure to the benefit of the Government, thereby relieving the Government from additional appropriations to this extent. There can be no real doubt but that the Post Exchange as it is presently operated under army regulations, promotes in a large measure the welfare of the military personnel and that except for such operations the Government would itself be

called upon to supply such facilities. Considered in this light it is certainly a subordinate or auxiliary agency and falls easily within the accepted definition of an instrumentality of the United States.

The legislative history of the Buck Resolution shows that it was not intended to remove the existing exemption applicable to post exchanges on military reservations. The report of the hearing before a subcommittee of the Committee on Finance of the United States Senate on April 23, 1940 shows that the resolution was introduced in response to a need for Congressional action arising principally out of the following situation. In many instances a licensed retailer on a government reservation would contract for the purchase of articles in a State away from the Army reservation, but because delivery was made and title taken in the reservation, it was contended that as title had not passed until that time, no state sales or use tax was payable. Accordingly, licensed traders on government reservations could do business without paying any sales tax, while merchants across the street were being required to pay a sales tax on identically the same type of goods. In order to avoid lengthy litigation in clearing up the legal questions involved, and to provide uniformity in the administration of state sales taxes and use taxes, the Buck Resolution was introduced. The debate on the Resolution as originally passed by the House of Representatives, which resulted in its amendment by the addition of Section 3, providing the exemption, shows that Section 3 was added to the Resolution to meet the objections of the Army and Navy Departments and the Marine Corps that sales by Post Exchanges and commissaries to the military personnel (but excluding such sales to civilians) should be exempt from State taxation. The phrase "instrumentality" of the United States was used to reach that result.

The question has also been very recently considered by a Three-Judge-Court sitting in the Eastern District of South Carolina, wherein it was held that the Post Exchange at Fort Jackson, South Carolina, was an instrumentality of the United States within the meaning of the Buck Resolution. See United States v. Query, D.C., 37 F.Supp. 972; affirmed, 4 Cir., June 27, 1941, 121 F. 2d 631. The reasoning and ruling in that opinion, which is also supported by the following authorities, appears to me to be conclusive of the issue involved in this ac-

tion. See United States v. Query, D.C., 21 F.Supp. 784; State of New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306; Dugan v. United States, 34 Ct. Cl. 458; Henry Woog v. United States, 48 Ct.Cl. 80; Opinions, Judge Advocate General, Nov. 21, 1899, Dec. 30, 1914, Jan. 20, 1915, May 17, 1918; Opinion, U.S. Attorney General, Aug. 5, 1939, Vol. 39, No. 85.

The Court is accordingly of the opinion that the Post Exchange at Fort Knox, Kentucky, is a federal instrumentality within the purview of the exemption clause of the Buck Resolution, being section 3 of the House Resolution 6687; that neither the defendant Captain Robert Stevenson, nor the defendant Post Exchange is required to purchase a license from the Commonwealth of Kentucky authorizing them or either of them to engage in the business of selling malt beverages, and that the Commonwealth of Kentucky is without right to levy or to impose its regulatory statutory provisions, on the sale of malt beverages sold by the plaintiff Falls City Brewing Company to the Post Exchange at Fort Knox, Kentucky, for resale to the authorized purchasers from that organization. Counsel for plaintiff will prepare and tender for entry a proper judgment in accordance with this opinion.