## UNITED STATES v. BATTLE.

### (Circuit Court, W. D. Georgia, S. D. June 6, 1907.)

1. CRIMINAL LAW—FEDERAL COURTS—JURISDICTION—CRIMES COMMITTED IN FEDERAL BUILDINGS.

The state of Georgia had power to cede jurisdiction to the United States over a lot of land in the city of Macon to which the federal government acquired title for the erection of a public building thereon, so that the federal courts sitting in such state had exclusive jurisdiction to try accused for an alleged murder committed on such ground.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 189.]

2. HOMICIDE—INDICTMENT—ALLEGATION OF STATUTE.

An indictment alleging that a homicide was maliciously, unlawfully, and feloniously done ·was sufficient without pleading the statute alleged to have been violated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 192, 202.]

3. INDICTMENT—COURTS—JURISDICTION.

In a prosecution for a crime alleged to have. been committed on land purchased by the government for the erection of a federal building, it was not necessary that the indictment should plead that title to the land was in the government.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 238.]

Thomas Battle was indicted for the murder of D. M. Berry by a federal grand jury, the offense being charged to have been committed on a plot of ground in the city of Macon, Ga., which had been conveyed to the United States for the erection of a post office and federal court building, over which territory the state had surrendered jurisdiction, reserving the right to serve process and apprehend offenders there. On demurrer to the indictment. Overruled.

Alexander A. Kerman and Robert E. Storrs, for the Government.
John Randolph Cooper, for defendant.

SPEER, District Judge (orally). The demurrer of the learned counsel for the defendant, although largely placed on that ground, is not in favor of state sovereignty. It is in derogation of state sovereignty. It is a contention that the state has not the right to cede its territory to the government of the United States for the mutual benefit of the government and the people of the state. Said the Supreme Court of the United States in Benson's Case, 13 Sup. Ct. 60, 146 U. S. 325, 36 L. Ed. 991:

"In their relation to the general government, the states of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the state, they are not those of a different country, and the two—the state and general government—may deal with each other in any way they deem best to carry out the purposes of the Constitution. It is for the protection and interests of the state, their people and property, and as well for the protection and interest of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the state as instrumentalities for the execution of the powers of the general government, which are, as already stated, taken from

such control of the states as would defeat or impair their use for those purposes; and if, for their more effective use, a session of legislative authority and political jurisdiction of the state would be desirable, we do not perceive any objection to its grant by the Legislature of the state."

And again:

"We also hold that it is competent for the Legislature of a state to cede exclusive jurisdiction over places needed by the general government in the execution of its powers; the use of the places being in fact as much for the use of the people of the state as for the people of the United States generally, and such jurisdiction necessarily ending when the places cease to be used for those purposes."

Now that is a fundamental and a philosophic statement of the relations between the state and the government. In such matters the Congress of the United States has the power to establish a post office. It therefore has the power to establish a building for the use of a post office. It has been found necessary, in the opinion of Congress, to pass laws to protect the government and the people of the states from the commission of crimes upon the territory or lot, or whatever it may be termed, which has been set apart for a post office. It has been true, therefore, from the beginning, that the policy of Congress in making preparations to buy land for the construction of public buildings for its use, and for the common use of the people of the state, has been to provide that exclusive jurisdiction shall be granted to the United States to punish crimes, and otherwise to protect the government (which is but another name for the people), in so far as that particular section is concerned. In this case the Legislature of our own state has passed an act, the title of which is:

"An act to provide for the ceding of jurisdiction to the United States to and over a certain lot of land in the city of Macon, Bibb county, said state, when the United States government shall acquire title thereto, for the purpose of erecting a public building thereon."

Has not the state a right to do that? Its Legislature seems to think so; the government seems to think so. The Supreme Court of the United States has held that it had that right, and the right is now for the first time challenged. It seems to me that argument upon that particular subject is concluded. Now, the citation of the authority, where the Supreme Court of the United States held that before Congress had made any law on the subject a battleship or ship of war was not such a place as that contemplated by the law, is not in point, and the distinction is expressed in the very headnote of the decision itself. It is: "The law does not extend to a ship of war, but only to what is in nature fixed territorially." Is not the corner of Third and Mulberry streets fixed? It would be very difficult for any one to move it, I imagine. It is a part of the territory formerly of the state of Georgia, and now of the United States, because the state of Georgia, in the exercise of its sovereign power, has ceded it. It is true that the state reserved the power to exercise its process there, for the reason that it does not want a public building to be a refuge for criminals. If a man who commits a crime flees to a public building, the police, sheriff, or deputy sheriffs can go there to seize him. There are no horns of the altar which he can take hold of there. The officers of

the state can follow and take possession of him. But where a man commits a crime in that territory, the only place that has jurisdiction to try him is a court of the United States, provided the Congress of the United States has enacted legislation denouncing such crime, and giving to the court jurisdiction to try it. We turn to section 5339 of the Revised Statutes [U. S. Comp. St. 1901, p. 3627], and we find that Congress has enacted that legislation. It provides:

"Every person who commits murder—First. Within any fort, arsenal, dockyard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States; Second. Or upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state; Third. Or who upon any such waters maliciously strikes, stabs, wounds, poisons, or shoots at any other person, of which striking. stabbing, wounding, poisoning. or shooting such other person dies, either on land or at sea, within or without the United States, shall suffer death."

We turn to the Constitution. We find there authority for the enactment of the law for the erection of "forts, magazines, arsenals, dockyards, and other needful public buildings," which Congress is given the exclusive power to legislate. Here is the original authority in the organic law, and here is the act of Congress made in pursuance of that law. Here are the decisions of the Supreme Court, fully ratifying and acknowledging the power, and there is the act of the Legislature of Georgia, making it applicable to the particular lot in question here. It follows that the question is no longer debatable. To cite a case where land was vested in trustees or a corporation for a soldier's home is not to cite an apposite authority, because there was no title therein vested in the United States, and no cession to the United States. The trustees are like any other person, and the jurisdiction of the state was not devested at all there. But here, as the Legislature had the right to cede title to the government of the United States, under the act of Congress and the Constitution, the only power which can exercise jurisdiction over this territory to punish any crime is the United States of America.

I wish very much that it were in my power to hold otherwise, and transfer this weighty and important case to my brother of the state court, but this I have no power to do. The law is plain, and I must perform, as far as falls to my lot, the duty which the Constitution and laws impose upon me.

As to the other points of the demurrer, they are fully answered by the District Attorney. It is charged that the crime was maliciously done, unlawfully and feloniously, and that is sufficient. It is not necessary to plead the act of the General Assembly, because that is the general law, which it is presumed that not only the court, but the defendant, knew. Nor is it necessary to plead the title of the government in the indictment. If the title is not shown in evidence, it may be possible that the government's case will fall. On the whole, I have no doubt of the duty of the court to overrule the demurrer.