## PETTIT *v.* THOMAS.

### Opinion delivered May 27, 1912.

1. INN—DEFINITION.—An inn, hotel or tavern is a house for the general entertainment of all travellers and strangers applying who are willing to pay the price of such accommodation. (Page 597.)

2. INNKEEPER—DEFINITION.—One who received all the transient people he could get, and was ready to entertain such persons whenever they came, provided they were proper persons, was an innkeeper, within the meaning of the law. (Page 598.)

3. SAME—LIABILITY FOR PROPERTY OF GUEST.—An innkeeper is an insurer of the property of his guest committed to his care and liable for any loss thereof, not arising from the act of God or the public enemy, or the neglect or fraud of the guest himself. (Page 598.)

4. SAME—DISTINCTION BETWEEN BOARDER AND GUEST.—It was not error to instruct the jury that the distinction between a boarder and a guest is made by the contract, that a boarder is one who contracts for board and entertainment for a definite period and for a fixed sum, and that one who stays at a hotel for an indefinite period is not a boarder but a guest. (Page 599.)

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee sued appellant, the proprietor of the Waverly Hotel, at Hot Springs, for the value of her baggage, wearing apparel, money and jewelry, destroyed by fire when the hotel was burned, alleging that he was an innkeeper, and that she was a guest at the time of the destruction of the property.

Appellant denied that he was an innkeeper, and that he

received appellee as a guest at the inn; alleged that he was the proprietor of a family boarding house, where visitors to the city of Hot Springs for the benefit of the water were entertained, and that she was a boarder at the hotel at the time of the destruction of the building and her personal effects by fire; denied that the fire was caused by any negligence or carelessness of himself or his servants, and that appellee lost the articles alleged.

Appellee testified that she lived in Louisville, Kentucky, and went to Hot Springs, Arkansas, on the 9th day of January, 1910; that she had known appellant for a little more than a year, and had been in Hot Springs twice during the winters recently before and once ten years before. On her arrival there, she went directly to the Waverly Hotel, having previously written appellant to meet her at the train; that she stayed at the hotel until it was burned, on the 23d of January. "Q. Now, did you go to the hotel to stay any particular length of time? A. I had come to stay indefinitely. Q. Did you notify them before you came that you intended to stay indefinitely? A. Yes, sir; I wrote to Mr. Pettit, and he replied that I could get my old room back, room 31, and when I got there it was all ready for me. Q. What terms were made for you? A. Fifteen dollars a week. Q. For any special length of time? A. I suppose right straight along all the time I was to be there. Q. Did you have any definite time to remain? A. No, sir; I expected to stay indefinitely; I expected to stay until I was cured. Q. You didn't make any contract for any definite period? A. No; I had always liked that hotel. I had always been comfortably situated, and expected to stay in one place all the time I was in Hot Springs. * * * Q. How long did you expect to stay at the Waverly when you went there? A. Indefinitely; probably until April. Q. Did you tell Mr. Pettit so? A. I did. Q. That you wanted to stay there possibly until April? A. I told it all around the hotel. I often said to Mr. Pettit that I meant to stay until I was benefited. I suppose he would have kept me as long as I paid my bills, and I expected to stay as long as it was agreeable and the accommodations suited."

Appellant testified that he was proprietor of the Waverly Hotel on the 9th day of January, 1910, and conducting the

place as the New Waverly Hotel, and that he advertised his business as a family hotel. That he had one or two transient guests in one year. That his rates were from $12.50 a week up to $21.00. That he did not advertise day rates. That he gave Mrs. Thomas one of the best rooms in the house. The rate in January for that room was $21, and he let her have it at $15, on the statement that she would be there quite a while. That she said she thought she would stay until April, or until she was cured, if she was benefited, if it took a year or more. The day rates for transient guests were $2 or $3 or more a day, and for her room would have been $3 a day for a transient guest. His rates were less in the summer than in the winter, and made relative to the length of time stayed. That the Waverly Hotel trade was all family trade, they were long stayers, and as a general rule nice family people, and that Mrs. Thomas was familiar with the room at the time she engaged it.

On cross examination, he stated that he had owned the Waverly Hotel for a little over a year, that is, the furniture and the lease. His principal patrons were families, and that the only reason he didn't take some more transients was because he couldn't get them. That he was ready to entertain them whenever they came, was ready to receive any one there who was a proper person, just like any other hotel or boarding house. Mrs. Thomas paid $17.50 for the room the winter before, and when she wrote and asked him what the rate would be he told her $15. He had no contract for any particular length of time, but just a verbal contract that she would be there until April. She said: "I will be here until April any way, and longer, if necessary."

The fire occurred on January 23, and destroyed the hotel and all of the plaintiff's baggage, wearing apparel, jewelry and personal effects, which, she testified, were of the value of $2,500, giving an itemized list thereof. There were eighty-three bedrooms in the hotel, a register was kept, day and night clerk, porter and bell boys, and Mrs. Thomas registered on her arrival and paid her bills weekly.

There was a good deal of testimony as to the origin of the fire, which probably started in the bathhouse, adjoining the hotel, which was under a separate lease to another party, al-

though Epperson, the engineer at the heating plant, stated that he saw through the door into the basement, the fire blazing at a place about under where the dishwashers stood, and where there was no occasion for any fire to be. That there was some kindling wood, an old boiler and a few other things stored in the basement. Other witnesses testified that they saw the fire over the bathhouse and supposed it originated there. There was no night watchman employed at the hotel, but the night clerk's duties comprehended that he should go through the corridors at night and have a general supervision of the hotel, and the engineer of the heating plant was supposed to look out for fires on the outside of the hotel and guard against prowlers and tramps.

The court instructed the jury, giving over appellant's objections instructions numbered 1, 2 and 3, as follows:

"1. You are instructed that the distinction between a boarder and a guest is made by the contract. A boarder is one who contracts for board and entertainment for a definite period and for a fixed sum. One who stays at a hotel for an indefinite period is not a boarder, but a guest."

"2. If you believe from the evidence that the plaintiff resided in Louisville, Kentucky, and, desiring to come to Hot Springs for her health, arranged to stop at the defendant's hotel at so much per week and that her proposed stay was for an indefinite period subject to be terminated by the plaintiff at will, and that she was received into the said hotel on these terms and conditions, then you will find that the plaintiff was a guest of the defendant and was not a boarder."

"3. You are instructed that if the relation of innkeeper and guest was established between plaintiff and the defendant, then it was the duty of the defendant, his agents and servants, to use the utmost care and the highest degree of care and diligence to protect the plaintiff against loss by fire; and if the plaintiff has suffered such loss, then you are instructed that the defendant is *prima facie* liable for the same, and the burden is on the defendant to establish such facts as will exonerate or relieve him from such burden; and unless you believe that the defendant has discharged this burden, you will find for the plaintiff."

The jury returned a verdict for appellee in the sum of

eight hundred dollars, and from the judgment appellant brings this appeal.

*Rector & Sawyer,* for appellant.

1. The court did not properly instruct the jury as to what constitutes a boarder, and, if it had, the evidence does not show that appellee was a guest. Calye's Case, 1 Smith's Leading Cases, p. 195, Hare & Wallace Notes. *Ad hospitandes homines per partes ubi hujusmodi hospitia existunt transeuntes, et in eisdem hospitantes.* Common inns are for passengers and wayfaring men. Beale on Innkeepers and Hotels, p. 202, § 291; 3 Bush (Ky.) 681.

A person who does not hold himself out as an innkeeper does not become such because he entertains travelers occasionally. 2 Dev. & B. 425; 1 Morris, 184.

2. This court has never adopted the strict liability rule; but, if so, it is not applicable to accidental fires. Beale on Innkeepers and Hotels, pp. 126 to 136; 3 Bush (Ky.) 133.

3. The testimony of Pettit as to the amount of insurance carried and the value of furniture was incompetent and highly prejudicial.

*W. H. Martin,* for appellee.

1. The instructions are not set out in the abstract. 75 Ark. 347. The presumption is the jury were properly instructed. 85 Ark. 123; 90 *Id.* 163; 57 *Id.* 441.

2. Innkeepers are chargeable for the goods of their guests lost or stolen from their inns. 33 N. Y. 571; 88 Am. Dec. 405-7; Cro. Eliz. 622; 33 Cal. 557; 91 Am. Dec. 675; 1 Cal. 221; 52 Am. Dec. 303; 27 *Id.* 198; 35 *Id.* 199; 134 Pa. 263; 52 Ark. 364-6; 16 A. & E. Enc. Law (2 ed.) 535. They are liable for accidental fires. Beale on Innkeepers and Hotels, 135; 27 Am. St. 198; 88 Am. Dec. 405; 35 Am. St. 199.

3. Plaintiff was a guest. 47 Ark. 126; 16 A. & E. Enc. L. 508; 94 N. Y. 1; 46 Am. Rep. 112; 33 Cal. 557; 7 Cush. (Mass.) 417; 98 Cal. 678; 4 Jones, Law. (N. C.) 67 Am. Dec. 266; 27 Am. St. 198; 5 Sand. 247; 91 Am. Dec. 657; 59 S. E. 1037; 14 L. R. A. (N. S.) 475; 7 Ga. 307.

KIRBY, J., (after stating the facts). It is contended by appellant that he was not an innkeeper, and that appellee

was only a boarder at the hotel, and that the court erred in giving said instructions.

The common law is in force in this State, and the liability of innkeepers thereunder has not been altered or abridged by our statutes.

"An inn has been judicially defined as 'a house where the traveller is furnished with everything which he has occasion for whilst upon his way; * * * but a mere coffee house or eating house or boarding house is not an inn." 2 Parsons on Contracts, p. 157.

Mr. Bishop says: "An inn, hotel or tavern is a house for the general entertainment of all travellers and strangers applying, ready to make suitable compensation, and may be or not for the accommodation also of their horses and vehicles." Bishop's Non-Contract Law, § 1165.

It is defined in 16 Am. & Eng. Enc. of Law, 508, as follows: "An inn is a house which is held out to the public as a place where transient persons who come will be received and entertained as guests for compensation. An innkeeper is one who holds out that he will receive all travellers and sojourners who are willing to pay the price adequate to the sort of accommodation provided."

Appellant, according to his statement, was proprietor of the Waverly Hotel; and, although his principal patrons were families, he received all the transient people he could get, was ready to entertain transient persons whenever they came, and to receive anybody who was a proper person, just like any other hotel, and under the circumstances he was an innkeeper, within the meaning of the law.

Being an innkeeper, he was, like a common carrier, an insurer of the property of his guests committed to his care, and liable for any loss thereof, not arising from the act of God, the public enemy, or the neglect or fraud of the owner of the property. It has been so held by the weight of authority that an innkeeper was an insurer of the property of his guest from the time of the decision in *Calye's Case,* 8 Coke, 32a, down to now.

Parsons states the rule: "Public policy imposes upon an innkeeper a severe liability. The later and on the whole prevailing authorities make him an insurer of the property

committed to his care against everything but the act of God or the public enemy, or the neglect or fraud of the owner of the property." 2 Parsons on Contracts, 158.

"He is an insurer of the safety of whatever baggage or other things he receives into his inn from his guest, whether in fact negligent in their keeping or not, except against the two overwhelming forces, termed the acts of God, or the public enemy. For example, if they are stolen or burned without the fault of either the guest or the landlord, the latter must pay for them." Bishop's Non-Contract Law, § 1173. See, also, 2 Kent's Commentaries, p. 594; Beale on Innkeepers and Hotels, §§ 185, 189; *Mason* v. *Thompson*, 9 Pick. 280, 20 Am. Dec. 471; *Hulett* v. *Swift*, 33 N. Y. 571, 88 Am. Dec. 405; *Pinkerton* v. *Woodward*, 33 Cal. 557, 91 Am. Dec. 675, *Magee* v. *Pacific Improvement Co.*, 98 Cal. 678, 35 Am. St. Rep. 199; *Shultz* v. *Wall*, 134 Pa. St. 263, 19 Am. St. Rep. 686; *Holstein* v. *Phillips*, (N. C.) 59 S. E. 1057, 14 L. R. A. (N. S.) 475; *Glenn* v. *Jackson*, (Ala.) 12 L. R. A. 382.

Appellant contends that this rule of liability does not apply to the case presented here because, as he insists, that appellee is shown to have been a boarder at the hotel and not a guest at the time of the fire and the destruction of the property.

"A guest is a transient person who resorts to and is received at an inn for the purpose of obtaining the accommodation which it proposes to afford. * * * But it is essential that a party shall be a transient; that is, that he shall come to the inn for a more or less temporary stay, and if he is transient he may become a guest, in a legal sense, notwithstanding an express contract between him and the innkeeper fixing the amount to be paid, for it has been laid down as one of the distinctive features of the relation that a guest is received under an implied contract." 16 Am. & Eng. Enc. of Law, 516.

In *Pinkerton* v. *Woodward*, 33 Cal. 557, 91 Am. Dec. 675, the court said: "A traveller who enters an inn as a guest does not cease to be a guest by proposing to remain a given number of days, or by ascertaining the price that will be charged for his entertainment, or by paying in advance for his board and entertainment, or by paying for what he has occasion for as his wants are supplied."

In *Berkshire Woollen Co.* v. *Proctor,* 7 Cush. (Mass.) 417, the court held: ''If a traveller who puts up at an inn and is received there as a guest makes an agreement with the innkeeper for the price of his board by the week, he does not thereby cease to be a guest and become a boarder.?''

In *Neal* v. *Wilcox,* 4 Jones, Law, 146 (N. C.), 67 Am. Dec. 266, the court said: ''A transient customer at an inn, although he be not a stranger or traveller, is considered as a guest; a lodger who sojourns at an inn and takes a room there for a specified time and pays for his lodging on a special agreement, as by the month or week, is a boarder.''

In *Fay* v. *Pacific Improvement Co.,* 93 Cal. 253, 27 Am. St. Rep. 198, the court said: ''The fact that the house is open for the public, that those who patronize it come to it upon the invitation which is extended to the general public and without any previous agreement for accommodation or agreement as to the duration of their stay, marks the important distinction between a hotel or inn and a boarding house.''

In *Bostick* v. *State,* 47 Ark. 126, the court, construing the statute in which appellant was charged with keeping a public tavern without a license, said: ''The testimony tends to prove that her house was a public house, intended for the reception and entertainment of all comers, and not a mere boarding house, where the boarder is selected and received into the house upon an express contract for a certain period of time.''

Thus it appears that the fact that a person has been at a hotel for more than a week, and paid the reduced weekly rate, does not make him a boarder, rather than a guest, in the absence of an agreement as to the time he would remain in the hotel. Neither does the fact that one makes an arrangement to pay a reduced rate per meal, or per day, or per week, take away his character as a guest, where there is no agreement as to the time he will remain at the hotel. And the question whether one is a boarder or guest is one of fact, to be determined by the jury under proper instructions from the court.

The court told the jury that the distinction between a boarder and a guest is made by contract. That a boarder is one who contracts for board and entertainment for a defi-

nite period and for a fixed sum. One who stays at a hotel for an indefinite period is not a boarder but a guest.

And by instruction numbered 2, that if they should find that plaintiff resided in Louisville, Kentucky, and, desiring to come to Hot Springs for her health, arranged to stop at defendant's hotel at so much per week, and that her proposed stay was for an indefinite period, subject to be terminated by the plaintiff at will, and that she was received into the said hotel on these terms and conditions, they would find she was a guest of the defendant and not a boarder.

From the authorites already cited, it will be seen that this was a substantially correct declaration of the law, and the testimony, as set out, shows that appellee came to the hotel with the expectation of remaining an indefinite length of time; and, although there was an agreement as to the weekly rate she should pay for entertainment, there was none as to the time of her stay, and she could have departed at any time that suited her whim or convenience, and the jury were warranted in finding that she was a guest of the hotel, and not a boarder.

It follows that no error was committed in the giving of said instructions, and, notwithstanding the court gave an instruction as to the liability of the hotel keeper, number 3, which was more favorable to appellant than the law warranted. he can not complain of that.

The judgment is right, and is affirmed.