## WILLIAMS v. ARLINGTON HOTEL CO.

(District Court, E. D. Arkansas. W. D. October 6, 1926.)

No. 6712.

1. **Courts ⬳92—Judgment of Supreme Court deciding two questions, on either of which it might rest its judgment, is not obiter as to either.**

Where a case involved two or more questions, on either of which the Supreme Court might rest its decision, and both were argued and determined, the decision of neither can be treated as obiter.

2. **United States ⬳3—Lands not acquired from states, but owned in its sovereign capacity, are subject to laws of state, except such as may interfere with governmental use (Const. art. I, § 8, cl. 17).**

Under Const. art. 1, § 8, cl. 17, cession of jurisdiction by a state to the national government over lands not acquired by purchase with consent of the state, but owned by the United States in its proprietary capacity, does not exempt such lands from control or interference by legislation of the state, unless the subsequent legislation of the state is of a nature which will affect or embarrass the effective use of the premises for governmental purposes.

3. **United States ⬳3—Hotel conducted by lessee on Hot Springs reservation held subject to state statute regulating liability to guests (Crawford & Moses' Dig. Ark. §§ 4558, 5564–5567; U. S. Comp. St. § 5251; Act Cong. Aug. 24, 1912 [37 Stat. 459]).**

The Hot Springs reservation is on land acquired as part of the Louisiana Purchase, and has since been a part of the public domain. By Crawford & Moses' Dig. Ark. § 4558, the state ceded to the United States jurisdiction over the reservation, to be exercised so long as the same shall remain the property of the United States, reserving only the right to serve state process therein. The government, under Act Cong.

Dec. 16, 1878, as amended by Act Cong. April 12, 1904 (Comp. St. § 5251), and Act Cong. Aug. 24, 1912 (37 Stat. 459), leased one acre to defendant corporation, on which it conducted a hotel for private use, the remainder of the land being used by the United States as a park and site for an army and navy hospital. *Held,* that the hotel was subject to Crawford & Moses' Dig. Ark. §§ 5564–5567, regulating liability of hotel and inn keepers to their guests.

**4. Courts ⬡⟹365—State decisions involving federal questions not controlling in federal courts.**

A decision of the highest court of a state, which involves a question arising under the Constitution or laws of the United States, as to such question is not controlling in the national courts.

**5. United States ⬡⟹3—Lease of land over which state has ceded jurisdiction for private use suspends exclusive jurisdiction of United States.**

When land over which jurisdiction has been ceded to the United States by a state is leased by authority of an act of Congress to a private person for private use, so long as it is so used, the exclusive jurisdiction by the United States is superseded.

At Law. Action by Elise Williams against the Arlington Hotel Company. On demurrer to complaint. Demurrer sustained.

Seth M. Walker and William Waller, both of Nashville, Tenn., and Chas. S. Harley, of Little Rock, Ark., for plaintiff.

Martin, Wootton & Martin, of Hot Springs, Ark., for defendant.

TRIEBER, District Judge. The material allegations of the complaint, so far as necessary for the determination of the demurrer, briefly stated, are: On April 5, 1923, the plaintiff was a transient guest at the hotel of the defendant, operated by it as a public hotel in the city of Hot Springs, Ark., located on an acre of ground, in the extreme northwestern corner of a reservation of the government, which had been reserved by section 4 of the Act of Congress of March 3, 1877, 19 Stat. 378; that on the southwestern portion of this reservation the United States had erected and maintained ever since its erection, and still does maintain a hospital for the army and navy, and uses the rest of the land of the Reservation, which is set out in the Act of cession of the state, copied in the complaint, except the western strip of the entire reservation, which included the premises occupied by the hotel of defendant under lease from the government, for a national park. The lease was made by the Secretary of the Interior under authority of an Act of Congress of December 16, 1878, 20 Stat. 258, corrected by the Act of April 12, 1904, 33 Stat. 173 (section 5251, U. S. Comp. St. 1916), and renewed under the Act of August 24, 1912, 37 Stat. 459; that the entire reservation was a part of the public domain acquired by the United States by the Louisiana Purchase, from France in 1803.

It is further alleged that, while the plaintiff was a guest at the hotel, it was, on April 5, 1925, totally destroyed by fire and all of plaintiff's wearing apparel, money, and jewelry, at the time in the rooms assigned to and occupied by her as such a guest, were destroyed and lost. The value of the lost property is alleged to be $6,326, for which sum judgment is prayed. Diversity of citizenship is alleged, although as the issue of law involved, as set out in the complaint, also raises a federal question, which would confer jurisdiction of the cause on this court, regardless of the diverse citizenship of the parties. Great Northern Ry. v. Galbreath Cattle Co., 271 U. S. 99, 101, 46 Sup. Ct. 439, 70 L. Ed. 854.

The complaint does not allege that the fire was intentionally produced by the defendant or its servants, nor are there any allegations that the hotel or any part of it was operated by or for governmental purposes, or that the government had any connection whatever with its operation, use, or control, or that the hotel and its operation, in any manner, interfered with or embarrassed the operation or use of the part of the reservation used by the government, for the hospital, the park, or other governmental purposes. The act of the state ceding jurisdiction over the entire reservation, including the part occupied by defendant's hotel, was enacted on February 21, 1903, and is digested as section 4558, Crawford & Moses' Digest of Arkansas Statutes of 1921.

The act limits this cession "so long as the same shall remain the property of the United States," and contained the following proviso: "Provided, that this grant of jurisdiction shall not prevent the execution of any process of the state, civil or criminal, on any person who may be on such reservation or premises: Provided, further, that the right to tax all structures and other property in private ownership on the Hot Springs reservation accorded to the state by the act of Congress, approved March 3, 1901, is hereby reserved to the state of Arkansas."

It is proper for a full understanding of the issue herein involved to state that, on May 27, 1912, the Supreme Court of the state in Pettit v. Thomas, 103 Ark. 593, 148 S. W. 501, held that under the common law

(which was at that time in force in the state), a hotel or innkeeper was, "like a common carrier, an insurer of the property of his guests committed to his care, and liable for any loss thereof, not arising from the act of God, the public enemy, or the neglect or fraud of the owner of the property."

Although the authorities on this question are conflicting, it will be assumed, without deciding that, in the absence of a later statute of the state, the rule there established would govern this case. At the first session of the General Assembly, after this decision, it enacted a law, approved March 29, 1913, Session Acts 1913, p. 934 (sections 5564 to 5567, inclusive, Crawford & Moses' Digest of Arkansas Statutes of 1921), entitled "the limited liability and protection from fraud law." Notwithstanding this title the act is confined exclusively to the regulation and liabilities of hotels and innkeepers and their guests.

Section 2b of the act (section 5567, Crawford & Moses' Digest) is as follows: "The liability of the keeper of any inn or hotel, whether individual, partnership, or corporation, for loss of, or injury to, personal property placed by his guests under his care, other than that described in the preceding sections, shall be that of a depository for hire, except that in case such loss or injury is caused by fire not intentionally produced by the innkeeper or his servants, such innkeeper shall not be liable: Provided, however, that in no case shall such liability exceed the sum of one hundred and fifty dollars for each trunk and its contents, fifty dollars for each valise and its contents, and ten dollars for each box, bundle, or package and contents, so placed under his care, and all other miscellaneous effects including wearing apparel and personal belongings, fifty dollars, unless he shall have consented in writing with such guests to assume a greater liability."

It is conceded by counsel for plaintiff that, if this act applies, the defendant is not liable in this action, and the demurrer to the complaint must be sustained. The contention of counsel for plaintiff is that, as the act was enacted long after the state had ceded exclusive jurisdiction over the entire reservation, on a part of which the hotel was situated, the state was thereafter without jurisdiction or power to enact any laws which would apply to it, and therefore the rule established in Pettit v. Thomas, supra, governs. As alleged the land was not acquired by the United States by purchase with the consent of the Legislature of the state, but was part of the public domain acquired by the Louisiana Purchase.

The Act of Congress of March 3, 1877, 19 Stat. 377, provides for the disposition of a large part of the lands, which had been adjudged in the Hot Springs Cases, 92 U. S. 698, 23 L. Ed. 690, to be the property of the United States, but reserved certain portions thereof as a reservation, being the part described in the act of the state coding exclusive jurisdiction over it to the United States. On one acre of this reservation the defendant operated the hotel. The history of the title of the United States to these lands is fully set out in the opinion of the Supreme Court in the Hot Springs Cases, supra, and need not be restated. Reference to that opinion only is necessary.

The issues involved in this case require a construction of the second part of article 1, § 8, cl. 17, of the Constitution of the United States. That clause, after providing for exclusive jurisdiction by Congress of a district for a seat of the government, contains the following additional provision: "And to exercise like authority over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings."

The leading authority on which counsel for both parties rely is Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264. Without restating the facts in that case, as they are fully set out in that opinion, it is sufficient to state that in many respects they are similar to those in the case at bar. Others arising in this case, and not involved nor passed on in the Ft. Leavenworth R. R. Case, will be stated and determined later in this opinion. The issue in that case, as stated in the opinion, was: "The contention of the plaintiff is that the act of cession operated under the Constitution to vest in the United States exclusive jurisdiction over the reservation, and that the last saving clause [referring to the act of cession by the state of Kansas] being inconsistent with that result, is to be rejected." 114 U. S. 528, 5 S. Ct. 997 (29 L. Ed. 264).

The land involved in that case was a part of the public lands acquired by the United States by the Louisiana Purchase, as are the premises in the instant case, and the cession of jurisdiction by the state of Kansas to the United States was made long after the establishment of the fort on the land involved in that suit.

[1] In deciding the case the court went fur-

ther than was perhaps necessary for the determination of the above-quoted contention of the plaintiff. No doubt, due to the fact that the question before the court was of great importance, and that the second part of this constitutional provision (article 1, § 8, cl. 17) had not theretofore been construed by the Supreme Court, so far as it involved lands not acquired by purchase with the consent of the Legislature of the state, in which the lands were situated, and not for its use as the seat of government, the court evidently considered it proper to construe it in all its phases, so far as they could in any wise affect that part of the provision of the Constitution, or the issue involved warranted.

All these questions having been fully discussed, and by the court, in a carefully prepared opinion, determined, they cannot be treated as obiter. The well-settled law is: "Where there are two grounds, upon either of which the" appellate court may rest its decision, and it adopts more than one, "the ruling on neither is obiter, but each is the judgment of the court and of equal validity with the other." Railroad Company v. Schutte, 103 U. S. 118, 143, 26 L. Ed. 327; Union Pacific Co. v. Mason City Co., 199 U. S. 160, 166, 26 S. Ct. 19, 50 L. Ed. 134; United States v. Title Ins. & Trust Co., 265 U. S. 472, 486, 44 S. Ct. 621, 68 L. Ed. 1110.

Besides every part of that opinion has been followed without question by all the courts, federal as well as state, and no part of it ever questioned or doubted. The court there held:

I. Where the title is acquired by the United States by purchase, with the consent of the Legislature of the state, the federal jurisdiction is exclusive of all state authority. 114 U. S. 532, 5 S. Ct. 999 (29 L. Ed. 264).

II. "Where, therefore, lands are acquired in any other way by the United States within the limits of a state than by purchase with her consent, they will hold the lands subject to this qualification: That if upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings, with their appurtenances, as instrumentalities for the execution of its powers, will be free from any such interference and jurisdiction of the state as would destroy or impair their effective use for the purposes designed. Such is the law with reference to all instrumentalities created by the general government. Their exemption from state control is essential to the independence and sovereign authority of the United States within the sphere of their dele-gated powers. But, when not used as such instrumentalities, the legislative power of the state over the places acquired will be as full and complete as over any other places within her limits."

[2] It must therefore be conceded that a cession of jurisdiction by a state to the national government to lands, not acquired by purchase with the consent of the state, but owned by it in its proprietary capacity, does not exempt such lands from control or interference by legislation of the state, unless the subsequent legislation of the state is of a nature which will affect or embarrass the effective use of the premises for governmental purposes, or perhaps changed by an act of Congress, a question not involved in the case at bar, and not decided. This is emphasized by what was stated in Chicago, Rock Island & Pacific R. R. v. McGlinn, 114 U. S. 542, 545, 5 S. Ct. 1005, 29 L. Ed. 270, a case in which the opinion of the court was delivered by Mr. Justice Field, who had also delivered the opinion in the Ft. Leavenworth R. R. Case, and was announced on the same day as that case. The court there said:

"This point was involved in the case of Ft. Leavenworth R. R. v. Lowe, 114 U. S. 525 [5 S. Ct. 995, 29 L. Ed. 264]. We there held, that a building on a tract of land owned by the United States used as a fort, or for other public purposes of the federal government, is exempted, as an instrumentality of the government, from any such control or interference by the state as will defeat or embarrass its effective use for those purposes. But, in order that the United States may possess exclusive legislative power over the tract, except as may be necessary to the use of the building thereon as such instrumentality, they must have acquired the tract by purchase, with the consent of the state. This is the only mode prescribed by the federal Constitution for their acquisition of exclusive legislative power over it. When such legislative power is acquired in any other way, as by an express act ceding it, its cession may be accompanied with any conditions not inconsistent with the effective use of the property for the public purposes intended. We also held that it is competent for the Legislature of a state to cede exclusive jurisdiction over places needed by the general government in the execution of its powers, the use of the places being, in fact, as much for the people of the state as for the people of the United States generally, and such jurisdiction necessarily ending when the places cease to be used for those purposes." 114 U. S. 545, 5 S. Ct. 1006 (29 L. Ed. 270).

[3] There is no allegation, and in the oral argument by counsel for plaintiff it was admitted, that the act of 1913 of the state in no wise interferes with the control of or management of the hospital, park or other uses of the reservation by the government, or can in any wise defeat, affect or embarrass its effective use for any governmental or public uses by the United States.

In 16 Op. Attys. Gen. 592, 594, involving a conveyance to the United States by the state for military purposes, with a proviso, "Reserving a free and uninterrupted use and control in the canal commissioners of all that may be necessary for canal and harbor purposes," the Attorney General held: "Hence the right of the state to occupy and use the premises for canal or harbor purposes must be regarded as limited, or restricted, by the purposes of the grant—that is to say, by the use of the premises for the military purposes of the government; and, consequently, where the use and occupation by the state would defeat or interfere with the purposes of the grant, the right of the state thereto does not exist. Whether, in any case, the use of the land by the state would be an interference with its use for military purposes, is a question for the military authorities to decide."

- That the lease to the defendant for a hotel would not so interfere was determined by Congress when it authorized the lease and the execution thereof by the Secretary of the Interior. Is it reasonable to presume that the state would have made the cession of exclusive jurisdiction, in order to enable the government to lease it for the operation of a public hotel by private persons or a private corporation?

[4] Counsel for plaintiff rely on a decision of the Supreme Court of the state in an action for loss of property, by a guest of the defendant's hotel, caused by the same fire which caused plaintiff's loss. Fant v. Arlington Hotel Co., 170 Ark. 440, 280 S. W. 20. In that case the court held that the act of 1913 did not apply. The opinion of the court on that point is very brief. All that it said on that point is: "We think it is equally clear that the statute [Act of 1913] was inoperative. The cession of jurisdiction was necessarily one of political power, and it took away the authority of the State government to legislate over the territory ceded to the general government. This point is expressly decided by the Supreme Court of the United States in the Lowe Case [referring to Ft. Leavenworth R. R. Co. v. Lowe, supra]," and to sustain its conclusions it quotes only

the following excerpt from the opinion in that case:

"These authorities are sufficient to support the proposition, which follows naturally from the language of the Constitution, that no other legislative power than that of Congress can be exercised over lands within a state purchased by the United States with her consent for one of the purposes designated, and that such consent, under the Constitution, operates to exclude all other legislative authority." 170 Ark. 444, 280 S. W. 21.

Not only is it a settled rule of comity that the federal courts, including the Supreme Court, will, if at all possible, lean toward the decision by the highest courts of a state, but the high regard this court has for the learning and ability of the justices of that court would incline it strongly to reach the same conclusion. But, when the questions involved arise under the Constitution or laws of the United States, the decisions of the courts of a state, although by its highest court, are not controlling on the national courts and their duty is to decide them in accordance with their own views. Road District v. St. Louis S. W. Ry., 257 U. S. 547, 558, 42 S. Ct. 250, 66 L. Ed. 364.

As the quotation by that court from the Ft. Leavenworth R. R. Case applies only to lands purchased by the government with the consent of the Legislature, which is not the fact in the instant case, this court, although reluctantly, cannot accept that opinion as authoritative, but must determine the point independently, guided by the law as construed by the Supreme Court of the United States and other national courts.

If the contention of counsel for plaintiff is to be sustained, and the opinion of the state Supreme Court followed, the Legislature of the state may cede exclusive jurisdiction to the national government over all the public lands in the state, owned by the United States (about 2,000,000 acres), and deprive the state of all jurisdiction over these lands. In fact it may cede jurisdiction over any territory of the state, even if not owned by the government. That the framers of the Constitution never intended such a cession is beyond question.

When the original resolution on that subject (article 1, § 8, cl. 17, of the Constitution) was first introduced in the convention, it only provided for exclusive jurisdiction over lands to be acquired for the seat of government. The committee to whom the proposition was referred added the words "and to exercise like authority over all places pur-

chased * * * for the erection of forts, magazines, arsenals, dock yards, and other needful buildings." When the report of the committee, with this amended provision, came before the convention, Mr. Gerry contended that "the power might be made use of to enslave any particular state by buying up its property, and that the strongholds proposed would be a means of awing the state into undue obedience to the general government."

Thereupon Mr. King moved to insert after the word "purchase" the words "by consent of the Legislature of the state," and with this amendment the resolution was adopted, and became a part of the Constitution. 5 Elliott's Debates, 571. Mr. Madison, discussing this part of the article in No. 43 of the Federalist, said: "The necessity of a like authority over forts, magazines, etc., established by the general government, is not less evident. The public money expended on such places, and the public property deposited in them, require that they should be exempt from the authority of the particular State. Nor would it be proper, for the places on which the security of the entire Union depend, to be in any degree dependent on a particular member of it. All objections and scruples are here also obviated, by requiring the concurrence of the states concerned, in every such establishment."

The Supreme Court, in the Ft. Leavenworth R. R. Case, after referring to this statement by Mr. Madison, said: "Besides these modes of acquisition, the United States possessed, on the adoption of the Constitution, an immense domain lying north and west of the Ohio river, acquired as the result of the Revolutionary War from Great Britain, or by cessions from Virginia, Massachusetts, and Connecticut, and, since the adoption of the Constitution, they have by cession from foreign countries, come into the ownership of a territory still larger, lying between the Mississippi river and the Pacific Ocean, and out of these territories several States have been formed and admitted into the Union. The proprietorship of the United States in large tracts of land within these states has remained after their admission."

The court further held in that case: "It would seem to have been the opinion of the framers of the Constitution that, without the consent of the States, the new government would not be able to acquire lands within them." 114 U. S. 530, 5 S. Ct. 998 (29 L. Ed. 264). And again: "Where lands are acquired without such consent, the possession of the United States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor." 114 U. S. 531, 5 S. Ct. 998 (29 L. Ed. 264). See, also, United States v. Cornell, 2 Mason, 60, decided by Mr. Justice Story on the circuit, and 14 Op. Attys. Gen. 33.

In view of these constructions of that provision, no other conclusion can be reached than that the jurisdiction of the state over the premises involved herein was not exclusive, at least not until Congress had made it by an act, which it has not done. In Crook, Horner & Co. v. Old Point Comfort Hotel Co. (C. C.) 54 F. 604, 610, it was held: "It would seem to be equally clear that, except as to the parts of that territory, not in actual use by the federal government for military purposes, whether appropriated to other purposes or not, the jurisdiction of the State is concurrent with that of the United States, and that such laws of Virginia as are not incompatible with those of the United States affecting that territory, and as do not conflict with the free use by the United States of the parts of the land actually used for military purposes, are themselves in force, and constitute the rule of conduct for the government of all inhabitants there, who do not belong to the army of the United States."

In United States v. Tucker (D. C.) 122 F. 518, 520, it was held: "In the opinion of the court, both a purchase with the consent of the state and an express cession of jurisdiction are not necessary to the powers and rights of the government. Either will be sufficient if the place is owned by the United States *and is actually used for governmental purposes.*" (The italics are mine.)

Another ground upon which the demurrer must be sustained is: The land on which the hotel was located was not used for any governmental purposes at the time of the fire or at any time after the execution of the leases. It had been leased to the defendant, for the purpose of operating a hotel for the entertainment of the public, who became its guests; the defendant was placed in exclusive possession and control of the premises, as the lessee of the United States, and exercised it continuously thereafter and at the time of the fire.

It was located in the extreme corner of the reservation, and it is not claimed, either in the complaint or in the elaborate argument of counsel, that its control and operation by the defendant in any wise defeats, affects, or embarrasses the effective use of the government for the purposes for which the tract, over which the exclusive jurisdiction was ceded by the state, was reserved by Con-

gress. Upon these facts the jurisdiction of the state is not affected. It was so held by the Court of Appeals of New York, in Barrett v. Palmer, 135 N. Y. 336, 31 N. E. 1017, 17 L. R. A. 720, 31 Am. St. Rep. 835, affirmed in 162 U. S. 399, 16 S. Ct. 837, 40 L. Ed. 1015.

Crook, Horner & Co. v. Old Point Comfort Hotel Co., supra, is directly in point, although the reservation of jurisdiction by the state of Virginia went further than that by this state. In that case the government had leased a part of the lands ceded to it by the state of Virginia, on which Fortress Monroe had been established by the United States, for hotel purposes. Long after the cession by the state, a mechanic's lien law was enacted by the state (page 609). The question involved was whether that act of the state applied to the hotel erected under the lease. In a carefully prepared opinion it was held that it did. The court, after reviewing the Ft. Leavenworth R. R. Case, held:

"It seems to me to be a necessary and an inevitable conclusion that the Chamberlin property has reverted jurisdictionally to Virginia, subject to such continued control by the United States as may be necessary to the discipline of the military post and the effective use of the post for military purposes. Subject to these limitations, it results that the laws of Virginia of a general character, such as do not conflict with the purposes for which the United States hold the land at Fortress Monroe, are in force there, especially in the places, like the Chamberlin Hotel, which have been appropriated to other than the military purposes for which only they were ceded by Virginia. If these conclusions be not true, then, except state laws more than half a century old, the hundreds of inhabitants engaged in civil pursuits and residing at Old Point Comfort are living in a No Man's Land, and, except in a criminal sense, are as complete outlaws as if they were at Botany Bay." 54 F. 611.

[5] It is true that, in these cases, the states in their acts of cession had made reservations, not found in the Arkansas statute of cession; but they are immaterial, in view of the reasoning and the authorities cited in the opinions. When lands, over which jurisdiction has been ceded to the United States by a state, are leased, by authority of an act of Congress, to a private person for private uses it is in effect a relinquishment of the exclusive jurisdiction, amounts to a recession thereof to the state, and invests the state with complete jurisdiction over such leased land, or, to state it more accurately, suspends the jurisdiction of the United States, while the land is occupied and used by the lessee for private uses. It has been so held in Renner v. Bennett, 21 Ohio St. 431; State v. Board of Commissioners, 153 Ind. 302, 54 N. E. 809; La Duke v. Melin, 45 N. D. 349, 177 N. W. 673.

In the Ft. Leavenworth R. R. Case the court in the concluding part of the opinion made this significant statement: "It [the cession] is necessarily temporary, to be exercised * * * for the public purposes for which the property was acquired or reserved from sale. When they cease to be thus used, the jurisdiction reverts to the state." 114 U. S. 542, 5 S. Ct. 1004 (29 L. Ed. 264).

Counsel for plaintiff cite Benson v. United States, 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991, as sustaining their contention. In that case one of the contentions was that "the particular part of the reserve on which the crime charged was committed was used solely for farming purposes," and it was held that "in matters of that kind the courts follow the action of the political department of the government." As stated hereinbefore, the lease of the land in question was authorized by an act of Congress. Besides, while the opinion does not state that the farm was used for raising food for the use of the prisoners confined in the Leavenworth prison, this was evidently the fact; at least it is not shown that it had been leased to parties for private use, by authority of Congress or the Secretary of War.

The conclusion of the court is that the act of the state of Arkansas of March 29, 1913, applies to the one acre on which the hotel was located, and therefore the defendant, under that act, is not liable for plaintiff's loss caused by the fire, which destroyed the hotel and her property.

The demurrer to the complaint is sustained.