**Louis E. MILLER, Appellant,**

v.

**PINE BLUFF HOTEL COMPANY,**
Appellee.

No. 16570.

United States Court of Appeals
Eighth Circuit.

Jan. 5, 1961.

See also 170 F.Supp. 552.

---

Ronald A. May, and Edward L. Wright, Jr., Little Rock, Ark., made argument for appellant and Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., were with him on the brief.

Paul B. Young, Pine Bluff, Ark., made argument for appellee. Bridges & Young, Pine Bluff, Ark., were with him on the brief.

Before WOODROUGH, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Appellant (plaintiff below) was unsuccessful in his attempt to recover for the loss of jewelry found by the jury to have a value of $65,000, and has appealed from the judgment in favor of appellee. Jurisdiction rests upon diversity and the amount in controversy.

There is no serious disagreement as to the facts. Plaintiff is engaged in the business of selling imported diamonds, set in ring mountings, to retail jewelry outlets throughout the United States, with emphasis on the southern states. On October 15, 1957, in the late afternoon, plaintiff and his wife arrived at the Pines Hotel in Pine Bluff, Arkansas, where plaintiff had stayed approximately three times yearly for the past twenty-five years. After registering, plaintiff drove to a local jewelry store, transacted business there, and returned to the hotel shortly after 5:30 P.M. The sample cases containing the jewelry in question were removed from plaintiff's automobile and taken to the registration counter by the hotel bell captain who was acquainted with plaintiff. At plaintiff's request, the clerk gave him two safety envelopes. Plaintiff signed each envelope designated as "Safety-Velope Check" and then removed the top part or stub of the envelopes. These identification checks were numbered 955 and 956 and corresponded with identical numbers on the envelopes. The envelopes bearing plaintiff's signature were then attached to the cases or bags by the clerk, and plaintiff retained the checks. In the area behind the registration counter and immediately adjacent to the hotel key rack was a small room used by the hotel for storage purposes. Plaintiff testified that he knew his bags were stored in this room, or had been for at least twenty-five years. The room was commonly known and referred to by the hotel employees and some guests as the "doghouse" and on occasions as the "chicken-coop." For ten or fifteen years plaintiff had heard the storage area referred to as the "doghouse." The door of the "doghouse" was not locked, and the clerks, the hotel manager, and bell boys when accompanied by other personnel, had access to the area. For a number of years an iron safe occupied one corner of the area behind the registration counter. The safe was plainly visible to any-

**36**

one registering at the desk; however, it was not large enough to accommodate and hold the cases containing plaintiff's diamonds.

After the identification envelopes had been attached to the cases, the bell boy took them to the "doghouse" for storage. Although plaintiff denied that he told the bell boy to place the cases in the "doghouse," he admitted knowing that they were taken into that room.

The following morning as plaintiff and his wife were preparing to check out and leave the hotel, plaintiff signed the identification checks and handed them to the clerk, and it was then discovered that both cases had been removed and were missing. They were never returned to plaintiff, who eventually brought this action to recover for the value of the property taken.

Plaintiff's complaint was in three counts. Count I sounded in negligence, Count II for breach of a special contract or arrangement; Count III on the theory that defendant was an insurer and absolutely liable for the loss.

■ The court submitted five interrogatories to the jury with appropriate instructions. In response to interrogatory one, the jury found that defendant was maintaining in the hotel a safe or vault that complied with the requirements of § 1 of Act 217 of the Arkansas Legislature of 1913; in response to interrogatory two, the jury found that while plaintiff's sample cases and contents had a value of more than $300, the employees of defendant, when they accepted the cases from plaintiff, did not know or have reasonable cause to know that the value of the cases was more than $300; in re-

sponse to interrogatory three, the jury found that the loss of the cases was due to a theft thereof by one or more of defendant's employees, or that such loss was proximately caused by the negligence of defendant; in response to interrogatory four, the jury found that plaintiff himself was guilty of negligence which contributed to his loss. Finally, the jury found the reasonable value of plaintiff's sample cases and contents to be $65,000. Being of the opinion that plaintiff could not recover because of the finding of contributory negligence on his part, the court entered judgment against plaintiff.[1] Thereafter plaintiff's motion for judgment was filed and denied.

Plaintiff contends that the court should have entered judgment for him on the basis of the jury's finding that the defendant was negligent, the argument being that there was no factual basis for the submission of the question of plaintiff's contributory negligence. In this connection, plaintiff asserts that the only conceivable basis for the jury's finding of contributory negligence was the failure of plaintiff to disclose to the hotel employees the nature or value of the contents of the sample cases, and as to this failure, plaintiff contends that as a matter of law there was no duty on plaintiff to make such disclosure, but rather the duty was on the hotel to make inquiry as to the value of the property which it accepted for storage.

■ By the weight of authority, in the absence of any stipulation, regulation or provisions limiting liability, an innkeeper is practically an insurer of the safety of property entrusted to his care by a guest, although in the event of loss,

1. While Arkansas has an "Innkeeper Statute," § 71–1107 et seq. Ark.Stats.1947, Annotated, it appears from the evidence that defendant had failed to fully comply with the statute inasmuch as notices were posted in only 6 places instead of the statutory requirement of 10. The trial court observed that this presented a question of law as to whether the statute had received "substantial compliance," and accordingly the Court reserved

a ruling on the question of defendant's compliance with the Act. Because of the disposition of this case upon the ground of plaintiff's contributory negligence, this issue is of no particular importance, inasmuch as contributory negligence would be a defense under the statute as well as the common law. For full discussion of the Arkansas statutes, see Hackney v. Southwest Hotels, 210 Ark. 234, 195 S.W.2d 55.

he may exonerate himself by showing that such loss resulted from an act of God or of the public enemy, *or from the fault of the guest himself*. See 29 Am.Jur., Innkeepers, § 81, 43 C.J.S. Innkeepers § 15; Pettit v. Thomas, 103 Ark. 593, 148 S.W. 501, 503, 42 L.R.A.,N.S., 122; Chase Rand Corp. v. Pick Hotels Corp. of Youngstown, 167 Ohio St. 299, 147 N.E. 2d 849, 855; Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 146 Neb. 47, 18 N.W.2d 551, 556; Southwestern Hotel Co. v. Rogers, 143 Tex. 343, 184 S.W.2d 835, 837. In 43 C.J.S., supra, § 14, p. 1155, the rule with respect to the fault of the guest, is thus stated:

"Regardless of whether or not in the particular jurisdiction an innkeeper is regarded as an insurer, * * * it is well settled that he is not liable for any loss of, or injury to, the property of a guest which was caused by the negligence of the guest himself."

See also 29 Am.Jur., Innkeepers, § 121; Beale on Innkeepers and Hotels, § 223. The difficulty often arises as to whether or not the conduct of the guest constitutes contributory negligence. And, as observed by the trial court in its memorandum opinion in denying plaintiff's after trial motion for judgment, "* * * the authorities are divided as to whether a hotel guest is as a matter of law required to disclose at least the general nature and value of the contents of a valise, parcel, or sample case deposited by him with the hotel management, or whether as a matter of law the hotel is required to make inquiry * * *." See 29 Am.Jur., Innkeepers, § 96, § 124; Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., supra, 18 N.W.2d at page 556; Chase Rand Corp. v. Pick Hotels Corp. of Youngstown, supra, citing cases holding duty is that of guest at page 856 of 147 N.E.2d; Annotation 53 A.L.R. 1048.

▆ Ordinarily, the question of whether the guest was negligent is one of fact to be determined from a consideration of the circumstances of the particular case. As stated in 43 C.J.S. Innkeepers § 14b, p. 1155: "* * * an act or omission which is negligence in one case may not be so regarded in another." "Ordinary diligence" may depend on the nature and value of the articles. Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., supra, 18 N.W.2d at page 559.

▆ Upon a careful consideration of the instant facts and circumstances, we conclude that the question of whether plaintiff was guilty of negligence which proximately contributed to the loss of his property was properly submitted to the jury.

Reverting to the evidence, the jury could have believed that plaintiff was fully aware that the two cases contained diamonds having a value of approximately $65,000, and that this valuable property was going to be placed in the "doghouse" for safekeeping; that he knew that the "doghouse" was an unlocked room and that access could be gained by authorized and unauthorized individuals; that while the bell boy knew that plaintiff was a jewelry salesman, there was no evidence that the clerk on duty when plaintiff checked his sample cases had such information. Furthermore, we find no circumstances which would place the clerk or any other employee on notice that property of extraordinary value was being entrusted to the hotel for safekeeping. As we have observed, the jury found that the clerk did not know the sample cases contained property having a value in excess of $300. The jury could well conclude that a person of ordinary prudence, surrendering property having a value of $65,000 for safekeeping, would advise hotel employees as to the extraordinary value of his property or would make inquiry as to the facilities of the hotel for storage of valuables. Plaintiff saw or should have seen that the iron safe was wholly inadequate for storage of his cases, but he said or did nothing. Consideration of all the circumstances would cause reasonable men to differ on the question so that the issue properly became one for the jury to resolve.

Arkansas has adopted what is known as a comparative negligence statute. Section 27–1730.1 of the Act of 1957 [Acts

1957, No. 296, § 1, p. 874] provides in pertinent part that contributory negligence shall not bar recovery of damages "for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, * * * causing such damage." Section 27–1730.2 [Acts 1957, No. 296, § 2, p. 874] provides:

"In all actions hereafter accruing for negligence *resulting in personal injuries or wrongful death or injury to property*, the contributory negligence shall not prevent a recovery where any negligence of the person so injured, damaged, or killed is of less degree * * * provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence." (Emphasis supplied.)

Plaintiff requested the court to instruct the jury in accordance with the foregoing statutes. In denying the request, the court stated that he had "concluded that the Comparative Negligence Statute doesn't include a case of this kind, * * *. That may be wrong, but from the wording of the Statute it just doesn't appear to me to cover a case of this kind."

Plaintiff now asserts error in refusing to submit the issue of comparative negligence to the jury. The parties were unable to cite us to any authority apposite to the problem, and independent research has failed to disclose that this question has been judicially determined. The extent to which the test is to be applied in jurisdictions having comparative negligence statutes is discussed in 65 C.J.S. Negligence § 170, where this pronouncement appears:

"In accordance with the general rule that statutes in derogation of common law are to be strictly construed, statutes of this kind (comparative negligence) have no retro-active effect; *nor will their application be extended beyond those classes of cases expressly enumerated where the legislative intention to do so does not clearly appear.*" (Emphasis supplied).

The instant statutes expressly provide that contributory negligence shall not bar recovery of damages for any *injury, property damage or death*, and that in an action for negligence "resulting in personal injuries or wrongful death or *injury to property*," etc. the contributory negligence shall only diminish the amount of recovery. (Emphasis supplied). This language does not evince a legislative intention to extend the doctrine to all tort actions. The language of the statute indicates a desire to cover situations resulting in physical *injury* or *damage* to personal property from negligence of another.

Concededly, we are confronted with a question involving local law, which apparently has not been resolved by the Supreme Court of Arkansas. It is, of course, entirely possible that the Arkansas Supreme Court would give the comparative negligence statute the broad interpretation contended for by plaintiff. But see and compare Terry v. Plunkett-Jarrell Grocery Co., 220 Ark. 3, 246 S.W. 2d 415, 29 A.L.R.2d 1264. Judge Henley, who tried this case, is eminently qualified and thoroughly competent to pass upon questions involving the law of Arkansas, and it was his considered judgment that the statute was not designed to cover the instant situation. This conclusion impresses us. If it was the intention of the legislature that the statute should apply to any and all tort actions wherein negligence of the party seeking recovery was a factor, it could have so provided in rather simple and concise language. See and compare Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., supra, 18 N.W. 2d at pages 555–556, involving a comparative negligence statute of less restrictive terms. As the statute stands, it is not clear to us that it should be extended beyond the class of cases in-

volving personal injuries, wrongful death or injury to property. We are not convinced that the trial court misconceived or misapplied local law. See Homolla v. Gluck, 8 Cir., 248 F.2d 731–733–735; Weiby v. Farmers Mutual Automobile Insurance Co., 8 Cir., 273 F.2d 327, 331; Kroger Company v. Doane, 8 Cir., 280 F.2d 1, 6.

Plaintiff also assigns as error the refusal of the court to give the instruction which encompasses plaintiff's theory of special contract. Section 71–1107 of the Arkansas Statutes, 1947, provides, in substance, that a hotelkeeper who has a metal safe or suitable vault, fit for the custody of money, bank notes, jewelry, etc., and who keeps suitable locks on the doors of sleeping rooms, and who posts a specified number of copies of the statute, shall not be liable for any loss suffered by a guest unless the guest has offered to deliver the property to the hotelkeeper for custody in such safe or vault. It is further provided that the keeper of the hotel shall not be obliged to receive from any one guest for deposit in the safe or vault any property described in the statute which exceeds a total value of $300. Section 71–1108 of the Act provides an exception to the foregoing in this language: "But such innkeeper or hotelkeeper may, by special arrangement with a guest, receive for deposit in such safe or vault any property upon such terms as they may agree to in writing, * * *," further providing that the hotelkeeper shall be liable to the guest after said articles have been accepted for deposit if caused by theft or negligence of any of the servants of the hotelkeeper.

The "Safety-Velope Check" above referred to and which was attached to plaintiff's jewelry cases, contained this language:

"The Hotel Pines will take all possible precaution to safeguard your property, but disclaim responsibility for valuables surrendered to wrongful holder of identification tag, and will not be responsible for any claim for loss unless made on delivery of this package."

Plaintiff construes the above as a special contract for the storage and redelivery of his property, and on the basis thereof, requested the court to give an instruction, which in substance would have told the jury that defendant issued two safe envelopes each of which contained the language above quoted, and "that the same constituted a special arrangement in writing to receive Mr. Miller's property for deposit *in the hotel's safe or vault*." (Emphasis supplied). The instruction proceeds by informing the jury that defendant would be liable "if you find that the hotel breached the agreement set out above." It is at once apparent that by the instruction the court was asked to declare that the printed matter on the envelope constituted a special arrangement to receive plaintiff's property for deposit in the hotel's safe or vault. The jury would not have been permitted to determine whether that was the effect of the writing. But we need not decide whether the failure to submit that question to the jury is fatal to plaintiff's contention, because it is obvious to us, and can hardly be disputed, that there was absolutely no evidence to support a finding that the hotel had agreed to deposit plaintiff's property in its *safe or vault*. Indeed, plaintiff's own testimony well nigh forecloses his right to claim that the hotel agreed to place the sample cases in the hotel's safe. He readily admitted that he knew that his property was being placed in the "doghouse," and he possessed sufficient information concerning that area to completely dispel any notion that the diamonds would be kept in a safe or vault. Obviously, a requested instruction must be based upon evidence and certainly not be contrary to the admitted evidence, and when there is no support in the record, refusal to submit an erroneous instruction is not error. Cherry v. Stedman, 8 Cir., 259 F.2d 774, 777–778; State of Arkansas ex rel. La Gasse v. Godbehere, 8 Cir., 261 F.2d 623, 625; Nationwide Life Insurance Company v. Attaway, 4 Cir., 254 F.2d 30, 34.

The case was fairly tried, there is evidence supporting the jury's responses to the interrogatories, there were no procedural errors prejudicing the rights of plaintiff, consequently the judgment is

Affirmed.